[No. 427.   Decided February 18, 1892.]

HJ. NYMAN, *Appellant*, v. JOHN W. BERRY, *Respondent*.

INSOLVENCY—ASSIGNMENT BY CORPORATION—VALIDITY.

An insolvent corporation may, in this state, make a common-law
deed of assignment of all its property to a trustee for the benefit of all
its creditors (as the provisions of ch. 143, Code 1881, do not cover cor-
porations), and such assignment will vest in the trustee the title to the
real estate of the insolvent corporation so as to prevent its judgment
creditors, who obtain judgment after the date of the deed, from subject-
ing such real estate to the payment of such judgments.

*Appeal from Superior Court, Pierce County.*

Action by Hj. Nyman against John W. Berry for an
injunction and the cancellation of a deed of assignment
by the Tacoma Brick Company to John W. Berry.   Judg-
ment for defendant, and plaintiff appeals.

*Doolittle, Pritchard, Stevens & Grosscup*, for appellant.

*Palmer & Palmer* for respondent.

The opinion of the court was delivered by

STILES, J.—The decision of this case seems to be left by
the parties to depend upon a single question, viz., whether
in this state a common-law assignment, made May 22, 1890,
by an insolvent corporation, of all its property, to a trustee
for the benefit of all its creditors, was valid and sufficient

to vest in the trustee the title to real estate of the insolvent so as to prevent a judgment creditor of the corporation, who obtained his judgment after the date of the deed, from subjecting such real estate to the payment of his judgment. No question is made but that were it not for the existence of the insolvent debtors' sections of the Code of 1881 (chap. 143), such an assignment could be made by a corporation; and no suggestion is offered that the deed in question would not have been a good and sufficient general assignment at common law. The respondent, it is true, seems to have been somewhat doubtful of his position, and has from time to time resorted to proceedings in the superior court which could only have justification on the theory that he was acting under the insolvent law; but his final appeal is to his rights under his deed, and we certainly think he must stand there, as in no respect whatever did the assigning corporation comply with the insolvent law, or place itself or its property within the jurisdiction of the court.

The inquiry here is, then, simply whether the insolvent law of the code applied to a corporation. This law was a state voluntary bankruptcy act, and resulted, in the absence of fraud, in the final discharge of the debtor, which is not usual as applied to insolvent corporations. "Every insolvent debtor may be discharged from his debts," is the provision of the first section. The reason for this arbitrary release of debtors is, that it is not deemed good public policy that men who, while they have failed in business, have dealt honestly should be kept in perpetual fear in their future efforts to recover themselves financially by the threats of unsatisfied creditors. But this reason has no application to a corporation, the existence of which is based upon capital and property, and has no future when these are swept away by insolvency and the surrender of its assets for distribution to creditors. It may live for some purposes, but there is no object in keeping it alive and freeing it from

debt as in the case of a natural person. Further, in the body of this act we find numerous provisions which are mandatory upon the debtor, but which seem to be impossible of compliance by a corporation. The various oaths, one of which is set out in exact words in § 2017, must be taken by the debtor, and the papers must be signed by him. No person can apply for recognition as an insolvent through an agent or attorney in fact (§ 2045), yet a corporation can act in no other way than by agents. Exemptions and homesteads are provided for (§ 2019), which a corporation does not have. When charges of fraud are made against the debtor he may be interrogated, and must answer in writing; and when the debtor, after an assignee has been appointed, refuses to deliver up any part of his property, he may be imprisoned until the delivery is effected. Neither of these provisions could be applied to a corporation, nor is there any implication that they could be made to cover any of its agents. Sec. 2051 seems to make the greatest extension of the purpose of the act intended, wherein it authorizes one member of a firm to execute a partnership assignment. No mention is made of corporations, nor is there any language in the act which would seem intended to comprehend them, except the use of the word "debtor." Of course if the purposes of the law do not extend to corporations, § 2052, which declares that no assignment of any insolvent debtor otherwise than is provided in chapter 143 shall be legal or binding upon creditors, has no force as applied to them.

The view we here take is, we think, supported somewhat by the fact that both in the national bankruptcy acts, and in many, if not all, of the state insolvent laws, corporations are specifically mentioned, as coming within their provisions, the requirements as to debtors, and their duties, examinations, penalties, etc., being made applicable to the officers of the corporations. The statute of Nevada, en-

acted in 1881, has all the features of our chapter 143, in nearly identical language; but it has also a clear and distinct reference to corporations, which appears to have been regarded as necessary to the completion of the law.    Gen. Stat. Nevada (1885), § 3892.

As acts of this kind are in derogation of the natural right of the owner of property to dispose of it as he sees fit, in the absence of fraud, they are to be construed strictly, and unless the intention to include a certain class of owners is clear they should not be held to apply.

It follows that the judgment is affirmed.

ANDERS, C. J., and HOYT, DUNBAR and SCOTT, JJ., concur.