[No. 1774. Decided September 18, 1895.]

W. D. McKAY, *Assignee, Respondent,* v. JOHN ELWOOD, *Appellant.*

CORPORATIONS — INSOLVENCY — COMMON LAW ASSIGNMENT — UNPAID STOCK SUBSCRIPTIONS — ACTION BY ASSIGNEE TO COLLECT — PLEADING — EVIDENCE.

In an action by a corporation upon an unpaid stock subscription, the complaint is not demurrable on the ground that it fails to allege that the capital stock of the corporation had all been subscribed, when the complaint otherwise alleges that plaintiff is and has been a duly organized and existing corporation, during all the time referred to in the complaint.

, A corporation, unless restrained by some statutory provision, may assign its property to a trustee for the purpose of selling same and applying the proceeds to the payment of its debts.

The fact that no call for unpaid stock subscriptions had been

made by the directors of the corporation prior to a deed of assignment of the corporate property to a trustee is no defense to an action by the trustee to enforce payment of the stock subscriptions, when corporate indebtedness is in excess of corporate assets.

Where an assignment for the benefit of creditors has been made by a corporation, the court in which the insolvency proceedings are pending has authority to make an order requiring payment of unpaid stock subscriptions.

In an action upon a stock subscription to which a plea of general denial was set up, the introduction of proof showing that all the stock had not been subscribed and of proof in rebuttal showing estoppel is immaterial; and error, if any, in the court's instruction upon the question of estoppel is not prejudicial.

*Appeal from Superior Court, Whatcom County.*

*Fairchild & Rawson,* for appellant.

*Kerr & McCord,* for respondent.

The opinion of the court was delivered by

GORDON, J.—In 1890 the Pratt Hardware Company filed its articles of incorporation pursuant to the laws of this state, and commenced business in the city of Whatcom with a capital stock of $40,000 divided into 400 shares of the par value of $100 each. In June, 1892, a receiver was appointed for said corporation, who qualified and took possession of its assets. Thereafter, said corporation made an assignment of all of its assets to Charles Requa, for the benefit of all its creditors *pro rata* in proportion to their respective claims, which deed of assignment was executed in pursuance of the resolution of the board of directors of said corporation acting under the authority and direction of its stockholders. The assignee qualified and began proceedings to remove the receiver, and to possess himself of the property of the corporation, pending which proceedings, the respondent McKay was selected to act as assignee by the creditors of said

corporation at a meeting called for that purpose. Thereupon said Requa (the original assignee) in pursuance of an order of court, and of a mutual arrangement between all parties concerned made in open court, deeded all the property of said corporation to respondent, and the receiver surrendered to him the possession thereof. Said McKay qualified as assignee, and proceeded to dispose of the property of the estate, realizing therefor about $7,000; and claims of creditors were filed with, and allowed by him aggregating upwards of $21,000.

At the time of said assignment, there was due the corporation, from various stockholders upon unpaid stock subscriptions, about $10,000, which amount (if fully paid in) together with the other assets of the corporation, would have been inadequate to discharge the indebtedness owing by the estate. The assignee having made application to the superior court of Whatcom county for that purpose, a call was issued for the balance remaining unpaid upon subscriptions to the stock of said corporation.

Appellant was a subscriber originally to ten shares of said stock (of the par value of $1,000) and thereafter and in addition to said subscription, had agreed orally to take an additional forty shares of said stock (amounting to the par value of $4,000), and had paid into the treasury of said corporation (on account of the said subscription, the sum of $3,750) prior to the making of said assignment, leaving an unpaid balance of $1,250, to recover which last mentioned sum, this action (after the making of said call, demand and refusal of payment) was instituted in the superior court.

A demurrer to the complaint having been overruled, appellant answered by a general denial. And from a judgment on the verdict of a jury in favor of the re-

spondent, and from an order denying appellant's motion for a new trial below, this appeal was taken.

It is first contended that the court below erred in overruling the demurrer to the complaint, and counsel for appellant urges in this court, that said complaint is defective in that it does not appear therefrom, (1) That the capital stock of said corporation had been all subscribed; (2) That it affirmatively appears that at the time of the execution of the deed by the corporation to Requa, no call had been made by the trustees for the balance remaining unpaid upon appellant's stock subscription.

In answer to the first objection, it is sufficient to say, that for the purposes of this action, it was not necessary for the pleader in framing his complaint, to allege that all of the stock of the corporation had been subscribed, nor to anticipate defenses growing out of irregularities in the organization of the corporation. The complaint, among other things, alleges, that the " W. J. Pratt Hardware Company is, and at and during all the time hereinafter mentioned, has *been a duly organized and existing corporation.*" This allegation we think sufficient. Sec. 138, Boone on Code Pleadings and authorities there cited. As a general rule, it is well settled that a want of capacity to sue must appear from the facts that are stated, and not from the omission of facts that would have exposed such want. Sec. 48, Boone on Code Pleading.

The remaining objection to the complaint involves necessarily a consideration of the nature and effect of the original deed of assignment by the corporation to Requa. The appellant insists that the law of this state, governing assignments for the benefit of creditors has no application to insolvent corporations, and such

was the holding of this court in *Nyman v. Berry*, 3 Wash. 734 (29 Pac. 557), in construing the provisions of chapter 143 of the act of 1881. An examination convinces us that the reasons for the holding in *Nyman v. Berry*, are as applicable to the existing statute, as to the one under consideration in that case, and that the contention of appellant in this regard must be upheld. But respondent insists that the assignment is sufficient and effectual as a common law deed of assignment. In *Nyman v. Berry*, *supra*, this court held that in this state an insolvent corporation might make a common law deed of assignment of all its property to a trustee for the benefit of all its creditors. That a corporation, unless restrained by the act under which it is incorporated, or prevented by other provision of statute, may assign its property to a trustee to sell the same and apply the proceeds to the payment of its debts, is fully sustained by the authorities. *Ardesco Oil Co. v. N. A. Oil & Mining Co.*, 66 Pa. St. 375; *De Ruyter v. Trustees of St. Peter's Church*, 3 Barb. Ch. 119; *Robins v. Embry*, Smedes &. M. Ch. 207; *Dana v. Bank of the United States*, 5 Watts & S. 223; *Haxton v. Bishop*, 3 Wend. 13; *Lenox v. Roberts*, 2 Wheat. 373.

The appellant seems to concede that the assignment to Requa was effectual as a common law assignment, but contends that a stockholder is not liable on a stock subscription until after a call or assessment is made by the directors of such corporation, and that inasmuch as no call therefor had been made at the time of the assignment to Requa, his liability had not ripened into an obligation, upon which an action could be maintained, and was not at that time an existing asset, and did not pass by the deed to the trustee. We are

unable to find any authority that will support this contention. Section 1511, Gen. Stat., provides:

"Each and every stockholder shall be *personally liable to the creditors of* the company, to the amount of what remains unpaid upon his subscription to the capital stock, and not otherwise."

It has long been the settled rule in this country that the assets of a corporation constitute a trust fund for the payment of all its creditors, and every stockholder is conclusively charged with notice of the trust character which it attaches to the capital stock. *Clapp v. Peterson,* 104 Ill. 26; *Wood v. Dummer,* 3 Mason, 308; *Union National Bank v. Douglass,* 1 McCrary, 86.

The supreme court of the United States in *Sanger v. Upton, assignee,* 91 U. S. 56, say:

"The capital stock of an incorporated company is a fund set apart for the payment of its debts. *It is a substitute for the personal liability which subsists in private co-partnerships.* . . . It is publicly pledged to those who deal with the corporation, for their security. *Unpaid stock is as much a part of this pledge, and as much a part of the assets of the company, as the cash which has been paid in upon it.* Creditors have the same right to look to it as to anything else, and the same right to insist upon its payment as upon the payment of any other debt due to the company. As regards creditors, there is no distinction between such a demand and any other asset which may form a part of the property and effects of the corporation."

The authorities upon this proposition are overwhelming and conclusive. *Curran v. Arkansas,* 15 How. 304; *Slee v. Bloom,* 19 Johns. 456 (10 Am. Dec. 273); *Briggs v. Penniman,* 8 Cow. 387 (18 Am. Dec. 454); *Ward v. Griswoldville Mfg. Co.,* 16 Conn. 593; *Fowler v. Robinson,* 31 Me. 189; *Union National Bank v. Douglass, supra;* Wait on Insolvent Corporations, 141.

Nor can the appellant — a stockholder in an insolv-ent corporation — be heard to urge the objection that the directors of his company failed to make a call for the balance remaining unpaid upon the subscription, where, as here, it is established that the indebtedness of the corporation largely exceeded its corporate assets, inclusive of unpaid subscription. Upon this point, the supreme court of the United States, speaking by Mr. Justice STRONG in *Hatch v. Dana*, 101 U. S. 205, say:

" Assuming that such a clause in the subscription [payable as called for by the company] meant more than an agreement to pay on demand, and that it con-templated a formal call upon all subscribers to the stock of the company, the subscriptions were still in the nature of a fund for the payment of the company's debts, *and it was the duty of the company to make the calls whenever the funds were needed for such payment.* If they were not made, the officers of the company violated their trust, held both for the stockholders and the company. And it would seem to be singular if the stockholders could protect themselves from pay-ing what they owe by setting up the default of their own agents. . . . It is well settled that a court of equity may enforce payment of stock subscriptions though there have been no calls for them by the com-pany."

We think, also, that from the time of an assign-ment by a corporation, the obligation of each stock-holder to make payment of the amount remaining un-paid on his subscription to stock, or so much thereof as might be necessary to satisfy the indebtedness of the corporation, must be treated as a debt that is pres-ently due, because after the assignment no power re-mains in the directors to make a call, and it would be contrary to all considerations of right to permit the stockholder thereby to avoid making payment for his

stock as against creditors of the corporation. But, however this may be, a call was made by direction of the court prior to the institution of this suit, and this was at least sufficient. *Sanger v. Upton, supra*; Cook on Stock and Stockholders (2d ed.), 207; *Marson v. Deither*, 49 Minn. 423 (52 N. W. 38).

In the case last cited, the court say:

" The cause of action alleged is founded on the subscription contract. Of course, the money did not become due or payable until a call had been made by the directors, or some authorized demand for payment made equivalent to such a call. *But this is but a step in the process of collection*, and the order of court, which was equivalent to a ' call,' was pleaded, not as the basis of defendant's liability, but to show that the money had become due and payable according to the terms of the contract. The authority and jurisdiction of the court, in which the insolvency proceedings were pending, to make an order requiring payment of unpaid stock subscriptions, as the directors might have done before the insolvency proceedings, is so well established as hardly to require the citation of authorities. *The court will, in such cases, do, in behalf of creditors, what it is the duty of the corporation to do in respect to calls, and may itself make the call, although by the terms of the contract of subscription, the money is payable on the call of the directors.*"

We think that the deed from Requa to the respondent was, under the circumstances of this case, sufficient to invest him with all the rights and subjected him to all of the duties and responsibilities imposed upon Requa by the original deed. In any event, the respondent, pursuant to the arrangement already noticed, undertook to execute the trust, and has nearly completed it, and the appellant is not in a position to assail his right to do so. The demurrer was properly overruled.

The other errors complained of, need but little attention. They relate mainly to objections at the trial, raising in different forms the questions which have already been considered in this opinion. The court did not err in overruling the motion for non-suit, nor in denying appellant's request for a peremptory instruction in his favor at the close of the evidence.

Upon the trial, the appellant was permitted (over the objection of respondent at the time) to offer proof that all of the capital stock of the corporation had not been subscribed, and in rebuttal, the respondent submitted testimony tending to show acts and conduct upon the part of the appellant amounting to an estoppel. We think it very clear that under the pleadings, the appellant was not entitled to show that all of the capital stock had not been subscribed. That question was not involved in the issue joined, and, while a good defense when properly set up, could not be litigated under a general denial. Hence the proof should have been excluded, and appellant cannot be heard to complain of the court's instructions to the jury as to what acts and conduct would estop the appellant from urging the non-subscription of all of the capital stock as a defense. The instruction complained of was more favorable to the appellant than the condition of the pleadings entitled him to. We may add that it is not apparent that the instruction was prejudicial to the appellant, even were we to hold that the inquiry, to which it was applicable, was a proper one for the consideration of the jury.

Finding no reversible error in the record the judgment is affirmed.

HOYT, C. J., and ANDERS, J., concur.

DUNBAR, J., dissents.