[No. 1588. Decided October 4, 1895.]

## CHARLES W. TURNER et al., Respondents, v. WILLIAM E. BAILEY et al., Defendants, JACOB FURTH AND JOHN LEARY, Appellants.

### CORPORATIONS — STOCK SUBSCRIPTIONS — PAYMENT IN PROPERTY — LIABILITY OF STOCKHOLDERS.

Stockholders of a corporation, whose capital stock has been fully paid by a transfer to the corporation of certain properties and franchises, considered in good faith by all parties concerned in the promotion of the corporation as equivalent in value to the amount of its capital stock, cannot be rendered individually liable to creditors from the fact that by subsequent depreciation in values the property applied in payment of the capital stock becomes greatly impaired in value. (DUNBAR, J., dissents.)

*Appeal from Superior Court, King County.*

*Carr & Preston,* and *W. R. Bell,* for appellants.

*C. W. Turner,* for respondents.

The opinion of the court was delivered by

GORDON, J.— The respondents have moved this court to strike the statement of facts and to affirm the judgment, for the reason that said statement was not served upon respondents before the filing thereof and because no copy of the same was served on the respondents after the original was filed. This motion is supported by the affidavit of one of the respondents.

An examination of the record discloses that, upon the day of filing the statement of facts in the superior court, the appellants served upon the respondents a notice which, after entitling the cause and direction to the respondents, proceeds as follows:

" You and each of you are hereby notified that the

defendants John Leary, Jacob Furth and William E. Bailey, desiring to have a statement of facts certified in the above entitled cause preparatory to appeal to the supreme court of the state of Washington, have prepared such statement of facts as proposed by them, and herewith serve a copy thereof upon you; and you are further notified that the said proposed statement of facts is this day filed in the above entitled cause."

It further appears by the admission of service endorsed by counsel for the respondents upon the original statement, that a copy of said statement was "received and service of same accepted" by them on the 28th day of March, 1894 (being the date upon which said original statement was filed). This, we think, is sufficient, and the motion to strike the statement and affirm the judgment will be denied.

The respondents, claiming as judgment creditors of the Seattle Terminal Railway & Elevator Company, a corporation alleged to be insolvent, brought this action in the superior court for King county, against said corporation, and against the appellants Furth and Leary and defendant Bailey, seeking a decree for the payment of their judgment by the said appellants and Bailey, as stockholders of said corporation, upon the ground that the stock held by them had not been fully paid. It is alleged in the complaint that said corporation was organized on the 29th day of March, 1890, with a capital stock of $1,000,000, divided into 10,000 shares of $100 each; that at its organization appellants and defendant Bailey each subscribed for ten shares of its capital stock, of which they have ever since been the owners and holders, and that they have not paid for the same, nor for any part thereof; that subsequently, on about September, 1890, the said appellants and defendant Bailey became the owners of additional shares of capital stock of said corporation as follows: Ap-

pellant Furth of 390 shares of the par value of $39,-
000; appellant Leary of 790 shares of the par value of
$79,000, and defendant Bailey of 790 shares of the par
value of $79,000; that no part of the par value of the
last mentioned shares had ever been paid, either by
the defendants or by their predecessors in interest;
that on the 7th of June, 1892, the defendant Wash-
ington National Bank obtained a judgment in the
superior court of said county against the Seattle Termi-
nal Railway & Elevator Company, a corporation, for
the sum of $3,761.67 and costs; that on the 10th of
March, 1893, an execution was issued thereupon; that
thereafter on the 13th of March, 1893, the sheriff of
said county made return of said execution, reciting
his inability to find any property of the defendant
wherewith to satisfy said judgment. The complaint
further alleges that part of said judgment, viz., the
sum of $1,467.19 of the principal thereof was a claim
held by C. W. Turner (one of the respondents), against
said company for professional services performed in
his capacity as attorney and counselor at law, and
moneys advanced and paid by him for said company
prior to the entry of said judgment; which claim was
by him, prior to the commencement of the suit in
which judgment was rendered, assigned to said Wash-
ington National Bank, "not for the use or benefit of
said bank nor with any intention that said bank
should become the owner of said claim, but merely be-
cause one judgment might cover the said claim and
also the claim of said bank against said company,
. . . and for the further reason that the merging
of both claims in one judgment would save expense to
said company and equally protect him and the said
bank." It is further alleged that prior to the com-
mencement of this action the said bank assigned to

the respondents herein an interest in said judgment equivalent to $1,467.19. It also appears that subsequent to said last mentioned assignment, the said company paid to said bank the full amount of its interest in said judgment, remaining unassigned, but has never paid to said bank or to respondents any part or portion of the interest in said judgment so assigned by the bank to the respondents. Also alleges that the trustees of the corporation have refused and neglected to make calls for the payment of the capital stock of said company.

The Washington National Bank is made a party defendant under the allegation that it was requested by respondents to join with them as parties plaintiff, pursuant to the statute, but refused so to do. The corporation defendant entered no appearance in this action.

Each of the appellants and defendant Bailey filed separate answers, in which they severally set out that prior to the organization of the corporation, the Seattle Terminal Railway & Elevator Co., Amos Brown, B. F. Shaubut and Thomas Ewing, were the owners of land in King county and of franchises, rights and privileges of the value of upwards of $1,000,000; that, being desirous of bringing about the organization of said corporation for the purposes expressed in its articles, and also of obtaining the co-operation and assistance of the appellants and defendant Bailey and to obtain their services as trustees of the corporation, they entered into an agreement with them whereby each of them was to assist in the organization of said corporation and subscribe for ten shares of its capital stock and accept the office of trustee, and in consideration thereof said Brown, Shaubut and Ewing would convey and cause to be conveyed to said corporation all of the property, rights, privileges and franchises

heretofore mentioned in payment for all the capital stock of said corporation; and that it was in pursuance of such agreement and not otherwise that defendants took part in the organization of said corporation and became the owners and holders of ten shares each of said capital stock; that upon the organization of said corporation, said Brown, Shaubut and Ewing did convey and cause to be conveyed to it all property, rights, privileges and franchises herein referred to, and the same were received and accepted by said corporation in full payment for all the capital stock of said corporation; that the value of the property so conveyed was fully $1,000,000, and was so believed to be by the trustees of said corporation; that thereafter, for the purposes of enabling said corporation to improve its property and further the ends and purposes for which it was incorporated, it became necessary to raise money, and to accomplish this end the corporation caused to be issued 250 of its first mortgage bonds of a par value of $1,000 each, the payment of which was secured by a first mortgage upon all of its property, duly executed and delivered to a trustee; that after said bonds were issued, it was ascertained by said corporation that the same could not be sold at the par value thereof unless some inducement should be offered to persons to subscribe for and purchase the said bonds. It was thereupon agreed between said corporation and said Brown, Shaubut and Ewing, the owners of the capital stock, that every person who should subscribe for and purchase one or more of said bonds at the par value thereof, should be entitled to receive shares of the capital stock of said corporation at the nominal value of eight times the par value of said bond or bonds so purchased by him, and that in pursuance of such agreement the appellant Furth sub-

scribed for and purchased five bonds of the said corporation of the par value of $5,000, which last mentioned sum was paid into the treasury of said corporation by him; and thereupon the said corporation issued and delivered to said appellant 400 fully paid up non-assessable shares of its capital stock. The appellant Leary and the defendant Bailey, in pursuance of said agreement, each purchased ten of the said bonds at a par value of $10,000, and the full sum of $10,000 was by each of them paid into the treasury of said corporation; and thereupon said corporation issued and delivered to each of them 800 fully paid up, non-assessable shares of the capital stock of said corporation; that it was further agreed that the shares of stock by each of said parties originally subscribed, viz.: ten, should constitute and in fact become a portion of the shares received by reason of his subscription to and the purchase of said bonds. In other words, it was agreed that the ten shares which each of said appellants had originally subscribed should be considered a part of the total number of shares to which he became entitled by reason of his purchase of the bonds.

For a further affirmative defense it was alleged in each of the separate answers that, prior to the 7th day of June, 1892, and prior to the existence of any indebtedness whatsoever, of the Seattle Terminal Railway & Elevator Company to the Washington National Bank *or to the plaintiffs*, all of the capital stock of said company had been fully paid, of all of which the defendant bank and the respondents at all of said times had full notice and knowledge.

By way of reply to the matters set forth in these answers, the respondents alleged that the defendants were promoters of said corporation and were associated with Brown, Shaubut and Ewing and other persons in

that behalf, and that, whatever rights or privileges the said company derived from said Brown, Shaubut and Ewing, they derived pursuant to a preconcerted understanding between them and said defendants and others associated with them, and without any consideration whatever, and that said properties, privileges and franchises were without any value whatever, and that if the same were designed to pay any subscription to the capital stock of the company, such design was a mere color and device on the part of the persons concerned therein to avoid the obligation previously voluntarily assumed by them to pay their respective subscriptions to the capital stock of said company; and further that, if the assignment and the transfer of said property was designed to pay for any of the capital stock of said company, the same was taken by said company at a gross overvaluation, which was intentional and fraudulent, and intended so to be. Other allegations in reply need not be here mentioned.

Upon the trial of the cause the lower court found that no payments whatever had been made on account of the stock held by the individual defendants; that no part of the subscription or price thereof has ever been paid either by defendants or their transferors; that as to such shares thereof as they respectively took by transfer, they had knowledge at that time that no part of the subscription or price thereof had ever been paid. And as conclusions of law the court found that the indebtedness due and owing from them on said account, or so much thereof as may be necessary to satisfy said judgment (the respondents'), is a trust fund to which respondents are entitled to look for satisfaction of said judgment; that the individual defendants and each of them should be required to pay into the registry of the court a sum of money on account of said subscription

necessary and sufficient to fully pay, satisfy and dis--
charge said judgment, together with costs, and a decree
therein against the individual defendants was entered
accordingly, from which this appeal is prosecuted.

The evidence introduced upon the trial of this cause
below and transmitted to this court is very voluminous,
and the number and character of the exceptions which
appellants have taken to the findings have necessitated
a great deal of labor upon the part of this court in the
examination of the record.   Having reached the con-
clusion that the findings on some of the material
propositions involved are not only against the great
weight of the evidence but practically without evidence
to support them, and that the decree in favor of the
respondents was not only erroneous, but that the same
should have been entered for the appellants, we deem
it unnecessary to here consider many of the questions
discussed in the briefs of counsel, and will confine this
opinion to a consideration of such only of the ques-
tions involved as are necessary to be considered for the
purposes of a final determination of this controversy.

It is admitted by the respondents that, commencing
at a time some two months after the incorporation of
the Terminal Company, and continuing until some
four or five months after judgment was entered against
said corporation in favor of the Washington National
Bank, the respondent Turner was the attorney for said
Terminal Company.   Without here stopping to con-
sider whether said bank could rightfully assign an
interest in a portion of the judgment which it held,
(without the consent of the judgment debtor), or the
other equally interesting question of whether respond-
ents can be considered to have been creditors of said
insolvent corporation at any time prior to the date of
the assignment to them of a portion of said judgment

41—12 WASH.

(which assignment was made on March 13,1893), and coming directly to the main question here involved, it is in our judgment abundantly established by the evidence that valuable properties, franchises, rights and privileges were secured for the corporation by Brown, Shaubut and Ewing, its original promoters; that the value of the properties, rights and franchises so secured for it was, in the candid judgment of all of the parties at that time interested therein, believed to be $1,000,000, and that, so believing, it was agreed that upon their securing the title to said property and proper assignments of said franchises and rights to said corporation, the said promotors, viz., Brown, Shaubut and Ewing, should become entitled to the whole of the capital stock of said corporation. That such *was* in fact the agreement and understanding arrived at by all of the parties interested in its organization, and by all of the parties who thereafter became interested as owners of any portion of its stock, the record in this case leaves little room for doubt or controversy. It is equally true that at the time of the trial of this cause in the court below the property was still of considerable value, as shown by the evidence, but owing to a combination of circumstances over which the appellants had no control and the existence of conditions for which they are in no wise responsible, the then value of the properties, rights and franchises which had been received by said corporation in payment of its capital stock as aforesaid was slight as compared to its value at the time when said corporation was formed. But it does not follow that because said property and franchises have greatly depreciated in value or even become entirely worthless that the appellants in this action should as stockholders be held liable to contribute to the respondents as creditors of

this insolvent corporation. Their liability therefor could only result from an intentional and consequently fraudulent over valuation, something which the evidence in this case wholly fails to establish.

In *Coit v. Gold Amalgamating Co.*, 119 U. S. 343 (7 Sup. Ct. 231), the court say of the suject we are here considering :

"The plaintiff contends, and it is the principal basis of his suit, that the valuation thus put upon the property was illegally and fraudulently made at an amount far above its actual value; . . . that the articles had no market or actual value, and, therefore, that the capital stock issued thereon was not fully paid, or paid to any substantial extent, and that the holders thereof were still liable to the corporation and its creditors for the unpaid subscription. If it were proved that actual fraud was committed in the payment of the stock, and that the complainant had given credit to the company from a belief that its stock was fully paid, there would undoubtedly be substantial ground for the relief asked. But where . . . the shareholders honestly and in good faith put in property instead of money in payment of their subscriptions, third parties have no ground of complaint. . . . But where full paid stock is issued for property received, *there must be actual fraud in the transaction to enable creditors of the corporation to call the stockholders to account.*"

And the proposition is fully sustained in the following cases : *Coffin v. Ransdell*, 110 Ind. 417 (11 N. E. 20; *Hospes v. Northwestern Mfg. & Car Co.*, 48 Minn. 174 (50 N. W. 1117, 31 Am. St. 637); *Bank of Fort Madison v. Alden*, 129 U. S. 372 (9 Sup. Ct. 332); *Medler v. Hotel Co.*, 28 Pac. (N. M.) 551; *Douglass v. Ireland*, 73 N. Y. 100; *Young v. Erie Iron Co.*, 65 Mich. 111 (31 N. W. 814); *Lake Superior Iron Co. v. Drexel*, 90 N. Y. 87; *Gamble v. Queens County Water Co.*, 123

N. Y. 91 (25 N. E. 201); *Phelan v. Hazard*, 5 Dill. 45; *Carr v. LeFevre*, 27 Pa. St. 413; *Bickley v. Schlag*, 46 N. J. Eq. 533 (20 Atl. 250); *Du Pont v. Tilden*, 42 Fed. 87; *Spence v. Construction Co.*, 36 Iowa, 407.

In Thompson on Liability of Stockholders, § 134, it is said :

"A corporation may take in payment of its shares any property which it may lawfully purchase. Such a transaction is not *ultra vires* or void, but is valid and binding upon the original sharetakers and upon the corporation, unless it is rescinded or set aside for fraud. While such a contract stands unimpeached, the courts, even where the rights of creditors are involved, will treat that as payment which the parties have agreed should be payment."

Indeed the cases are numerous in which it is held that to charge the holder of stock issued upon and for the purchase of property individually for the debts of the company, "it is not enough to prove that the property has been purchased and paid for at an over valuation through a mere mistake or error of judgment upon the part of the trustees," but it must be shown that the purchase at the price agreed upon was in bad faith.

It appears from the evidence in this case that the respondent Turner was present at a meeting of the stockholders of said Terminal Company, held some time in October or November, 1892, at which meeting a proposition was pending looking to the *voluntary* subscription of the stockholders of an amount sufficient to pay certain labor claims, indebtedness incurred by the corporation in the line of improvements in building a railway and erecting warehouses upon its properties. This meeting was held some five or six months prior to the time of the assignment by the bank to respondents of an interest in the judgment

which said bank held against the defendant corporation. There is some uncertainty as to whether the respondent was present at such meeting in the capacity of an attorney representing the interests of certain stockholders or as the personal representative of his father-in-law, Noah Armstrong, a stockholder in the company, or as owner of certain bonds of the company which he himself held; but we deem it unimportant to determine in what capacity he appeared. Concerning the part which respondent took in the proceedings at said meeting, we quote from the testimony of Judge BURKE, as follows:

" We entered into the discussion of the question of contributing to a fund to pay off the laborers and other creditors, and there was a general agreement of opinion on the part of those present that it would be well to do it; but General Turner (respondent) objected on the ground that he did not think that the bondholders or stockholders were under any legal or moral obligation to pay any debt of the company; that *the stock was fully paid stock*, and that *the property given in payment of it was worth the stock*, and he did not see any reason why he should be asked, or any stockholder should be asked to put their hands in their pockets to pay money gratuitously on these debts."

The witnesses Brown and Ballard, who were also present at said meeting, gave substantially like testimony as to what respondent Turner said at said meeting. This is important only as tending to show—what we think, in the absence of any evidence upon the question, might and should readily be inferred from the fact of his long connection with this corporation as its counsel — that he was at all times cognizant of the fact that the entire capital stock of the corporation had been accepted as a consideration for the properties, rights and franchises transferred to it by the

original promoters, and that, in pursuance of such understanding and agreement, the stock had at all times been considered as fully paid and non-assessable stock, and hence he should not be heard to question the sufficiency of the consideration received by the corporation for its stock, or the legality of the agreement reached concerning it.

The respondents do not appear to question the correctness of the proposition contended for by appellants, viz., that the capital stock of a corporation organized under our law may be paid for either in money or money's worth, which appears to be the settled rule, in the absence of charter restrictions or provisions of statute forbidding it.

We conclude that the court below erred in finding that no part of the stock of which the appellants are the owners had been paid, and in concluding that appellants, or either of them, are indebted in any sum for or on account of the shares of stock held by them, or either of them; and in failing to find that all of the capital stock of said corporation had been fully paid for in property received and accepted by said corporation in full payment of its stock. From which it follows that the decree must be reversed and the cause remanded to the lower court with instructions to proceed to enter judgment for the appellants and against the respondents, in accordance with this opinion.

HOYT, C. J., and ANDERS, J., concur.

DUNBAR, J., dissents.