[No. 2479. Decided March 18, 1897.]

ADAMANT MANUFACTURING COMPANY OF AMERICA, *Appellant*, v. THOMAS B. WALLACE *et al.*, *Respondents*.

INSOLVENT CORPORATIONS — OVERVALUATION OF STOCK — LIABILITY OF STOCKHOLDERS TO CREDITORS — ESTOPPEL.

In a suit by a judgment creditor of an insolvent corporation against stockholders to obtain payment of corporate indebtedness on the ground that the stock subscribed by them had not been fully paid up, it is not necessary to allege in the complaint that all the shares of corporate stock had been subscribed.

Action against the stockholders of an insolvent corporation, on the ground that their stock subscriptions were unpaid, may be maintained by a judgment creditor, regardless of the fact that no prior call has been made upon them for payment of the sums subscribed by them.

Debts due a corporation, including unpaid subscriptions to capital stock are equitable assets constituting a trust fund for the benefit of creditors, and may be reached by creditors through the aid of a court of equity, if the legal assets which can be reached by execution prove insufficient.

So far as creditors are concerned, subscriptions to the capital stock of a corporation must be fully paid for in cash, or in property of an equivalent value, irrespective of any understanding the shareholders may have among themselves as to their payments for stock, or as to its value.

Creditors who deal with a corporation with knowledge of the fact that stock subscriptions had been paid for in property of less value than the face value of the shares, are estopped from claiming that the stock subscriptions are impressed with a trust in their favor.

Appeal from Superior Court, King County.—Hon. JOHN C. STALLCUP, Judge.   Affirmed.

*Bausman, Kelleher & Emory*, for appellant.
*Campbell & Powell*, for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This is a suit in equity brought by a

judgment creditor of an insolvent corporation, to obtain payment for its debts, from certain of the stockholders, upon the ground that the stock subscribed by them had not been fully paid.  We say an "insolvent" corporation, although this is one of the questions in controversy; but we are satisfied from an investigation of the record that the corporation was insolvent, so that it will not be necessary to discuss that question further on.  The defendant corporation, the Adamant Plaster Manufacturing Company, was organized in April, 1889, with a capital stock of $100,000, divided into one thousand shares of $100 each. $45,000 of stock was subscribed by one Holbrook, and was paid for by him by turning over to the company a certain contract for patent rights for the manufacture of adamant.  The defendants in this action, the other stockholders, subscribed for the other $55,000 worth of shares, and an agreement was entered into between themselves that this stock should be issued to them as paid up stock, upon their building a factory and equipping it for the manufacture of adamant, upon their paying into the corporation $5,000 as a working capital, and upon the purchase of certain real estate in Tacoma as a site for the factory; and the stock was so issued.

It is the contention of the appellant that the property turned over to the corporation in consideration of these shares was not worth the face value of the shares, and that a fraud was thereby perpetrated upon the creditors, one of whom is the plaintiff in this action. It might be well to state here that the plaintiff corporation had obtained judgment against the defendant corporation, execution had issued and a writ of *nulla bona* returned, which return was the basis of this action against the stockholders to compel them to pay

into the corporation sufficient to liquidate its debt. The defendants demurred to the plaintiff's complaint, on the ground that it did not state facts sufficient to constitute a cause of action, which demurrer we think was properly overruled.

The first ground of objection to the complaint is that it shows on its face that the capital stock of the defendant corporation consisted of one thousand shares, but it nowhere appears in the complaint that all of said shares were subscribed. In support of the contention that this is a necessary averment, respondent cites *Denny Hotel v. Schram*, 6 Wash. 134 (32 Pac. 1002, 36 Am. St. Rep. 137). This case is easily distinguished from that one. In that case the action was brought by the corporation itself, while in the case at bar the action is brought by a creditor, and another rule prevails. However, this question was squarely decided by this court in opposition to respondent's contention in *McKay v. Elwood*, 12 Wash. 579 (41 Pac. 919), where it was held that in an action by a corporation upon an unpaid stock subscription, the complaint was not demurrable on the ground that it failed to allege that the capital stock of the corporation had been subscribed, when the complaint otherwise alleged that plaintiff was and had been a duly organized and existing corporation during all the time referred to in the complaint.

The next objection was that there was no allegation in the complaint that any demand or call was ever made by the trustees of the defendant corporation, or otherwise, or at all, upon the individual defendants, or upon any of them, for the sums respectively subscribed by them and alleged by the complaint not to have been paid, citing *Elderkin v. Peterson*, 8 Wash. 674 (36 Pac. 1089), which case was also an action by a

receiver against a stockholder, and is therefore not in point. The creditor has no control over the corporation or its business; is not supposed to know whether calls have been regularly made, or made at all. So it will be readily seen that while this may be a duty of the corporation itself in suing one of its members over whom it has control, the duty should not be imposed upon a creditor. That no calls are necessary before an action can be commenced by a creditor against the stockholder, see 2 Morawetz on Private Corporations, § 821, where the distinctions above referred to are commented on at length. We think the complaint in all respects was sufficient.

It is not necessary in discussing the merits of this case to set out in full the answer of the defendants, for the real contention must be whether or not the stock subscribed for was paid for in cash or its equivalent. The doctrine that the stock of a corporation is a trust fund for the benefit of creditors is one which is founded in equity and fair dealing, and in any event has become so well established in this country that it can no longer be gainsaid. This doctrine was announced by Chancellor KENT, as early as 1824, in *Wood v. Dummer,* 3 Mason, 309, and since that time has become the established law of this country and is termed the "American doctrine," although, as shown in the case above referred to, the same doctrine had long been established in England; and so universally has this doctrine been accepted, in America especially, that the citation of authorities seems a work of supererogation. We will, however, quote from 2 Morawetz on Private Corporations, § 820, the rule which is announced as follows:

"Debts due a corporation are equitable assets, and may be reached by creditors through the aid of a

court of chancery, if the legal assets which can be reached by execution prove insufficient. The liability of the shareholders to contribute the amount of their shares as capital is treated in equity as assets, like other legal claims belonging to the corporation. This liability, together with the capital actually contributed, constitutes the trust fund which in equity is deemed pledged for the payment of the corporate debts."

This being true, then it must necessarily follow, for the protection of creditors who dealt with these corporations, that the stock subscribed for must be paid in cash or in property of an equivalent value. In other words, the corporation must be in the actual condition which it represents itself to be in financially. If it were allowed to hold itself out as having a capital stock of $100,000, when in reality the capital stock, which is and must be, under the theory of the law, assets in the hands of the corporation, is worth only one-half that amount, the corporation is to that extent doing business under false colors, and is obtaining credit upon the faith of an asserted estate which is purely fictitious. And where, by any arrangement between the shareholders and the corporation, the stock is issued as fully paid up, when in fact it has not been paid to the full amount of its face value, but has been paid in property of a fictitious or inflated value, a court of equity will compel a payment by the stockholder for the benefit of the creditor who has dealt with the corporation relying upon the asserted value of its assets to the full amount or face value of the stock. Such is almost the universal holding of the courts of the present day. See *First National Bank v. Gustin, etc., Mining Co.*, 42 Minn. 327 (44 N. W. 198, 18 Am. St. Rep. 510); Taylor, Private Corporations, § 702.

The latter authority lays down the rule as follows:

"To issue shares as fully paid up for property known to the corporation and the shareholder receiving them to be materially below their par value, is a fraud on creditors, for whose benefit the shareholder to whom the shares are issued may be compelled to make up the difference."

See, also, *Wetherbee v. Baker*, 35 N. J. Eq. 501; 2 Cook, Stockholders, § 652; *Redmond v. Dickerson*, 9 N. J. Eq. 507 (59 Am. Dec. 418); *Higgins v. Lansingh*, 154 Ill. 301 (40 N. E. 362); *Scovill v. Thayer*, 105 U. S. 143; *Boynton v. Andrews*, 63 N. Y. 93; *Gilkie & Anson Co. v. Dawson, etc., Co.*, 46 Neb. 333 (64 N. W. 978); 2 Morawetz, Private Corporations, § 842, and cases cited.

So the question to be determined, so far as this branch of the case is concerned, is, was the $55,000 worth of stock subscribed for by the defendants in this action, who were the shareholders, paid for in money or its equivalent? This question must be decisively decided in the negative. If the most that is contended for by the respondents (defendants) in regard to the payment of this stock be accepted as fact, the payments would amount to only $28,600, instead of $55,000, the face value of the stock subscribed for, and which was issued as paid-up stock; for it is only contended that the shareholders were to pay, for this $55,000 worth of stock, a certain site for the factory of the estimated value of $14,000, the factory and its machinery which were found by the court to be of the value of $9,100, and $5,000 to be paid in cash as a working capital. The testimony, however, shows that there was really never anything paid but the factory, which was found by the court—and we think properly—to be of the value of $9,100. An

option on the land which was sought to be purchased was obtained for $3,500. It seems, however, that, instead of the shareholders advancing the money for this option, a note was given by the corporation to the Pacific National Bank for the same. It does not appear that this note was ever paid by the shareholders, or, in fact, that it was ever paid at all, although one of the defendants testified that he was satisfied that it had been paid; at all events that the bank did not claim such an indebtedness. However that may be, there is nothing to show that it was ever paid by the shareholders, and, if paid at all, was evidently paid out of the funds of the corporation. The $5,000 which was to be advanced as a working capital was obtained in the same way, by giving a note of the corporation indorsed by the individual shareholders. This note, with the exception of the interest, has never been paid, and the corporation finally gave a mortgage on its corporate property for the satisfaction of this debt, which mortgage is still alive and is a lien upon the property pledged. The land itself, upon which the option was obtained, has reverted to the original owners. So that in fact, so far as the testimony shows, and it was gone into at great length, the only thing of value which the corporation had ever received for the paid-up shares to the extent of $55,000 was the building, which, as we have before said, was correctly found to be worth $9,100.

This case, then, falls squarely within the rule which we have announced above, and, if there were no estoppels, the creditor would undoubtedly have the right to pursue this trust fund into the hands of the stockholders. In fact, there is no contention on the part of the respondents who testified in the action, that the property turned in by them was of the actual

value of $55,000.   Mr. Manning, one of the defendant stockholders, in testifying as to the value of the property, stated that they regarded the whole property as worth the amount of money represented by the stock; but, in answer to the following question by the attorney for the respondents, "That is to say, the patents and the building and all those things were estimated to be worth about $100,000?" said, "Well, I don't know as we figured it worth as much as that.   We thought it was worth as much as the stock was."   Now this is altogether another proposition.   It may have been worth as much as the stock, and doubtless that was the theory upon which these stockholders acted when they subscribed for the stock; and as between themselves in buying or selling stock, they would have a right to place any value they saw fit upon it, and place any value they saw fit upon the property which they were trading for the stock; but under the trust doctrine which we have announced above, it is not enough that the property which the corporation receives for the stock which it issues is worth as much as the stock; it must be worth the face value of the stock; and the fact, as testified to by the witness, that he thought it was worth as much as the stock, does not tend to sustain the assertion that the property received was worth the face value of the stock.

The findings of the court are peculiar, and, we think, in many instances unwarranted, and the conclusions of the court are unwarranted by the testimony and by the findings.   After the court found that the value of the building and machinery was only $9,100, it found, as a conclusion of law, that the subscriptions by the defendants were fully paid and satisfied before the commencement of this action, and that all of the capital stock of the defendant corporation had been

fully paid for in cash and in property received and accepted by said corporation in payment for its said stock. The second finding might be true and still would not justify the judgment that the plaintiff had no remedy against the defendants. There is no question under the record but that the stock was paid for in property received and accepted by the corporation in payment for the stock; but, as we have before intimated, while this would be a binding contract between the corporation and its shareholders, it does not meet the requirements of the law where creditors are concerned.

But there is another phase of this case which will compel the affirmance of the judgment, although it was not the ground upon which the court below acted. While the doctrine of trust fund is accepted in its broadest sense, it is well settled that a trust will not be impressed upon the stock of the corporation in the hands of the stockholders for the benefit of creditors who dealt with the corporation with knowledge of the fact that the stock had been paid for in property the value of which was less than the face value of the stock. As was well said in *First National Bank v. Gustin, etc., Mining Co., supra.*

" The whole doctrine that the capital stock of corporations is a trust fund for the payment of creditors rests upon the equitable consideration that the distribution of the capital among stockholders without making adequate provision for the payment of debts, or the issue of fictitiously paid up stock, is a fraud upon creditors who contract with the corporation in reliance upon its capital remaining intact, or in reliance upon the professed capital having been in fact paid up in full. But when the reason for the rule does not exist the rule itself ceases to apply. . . . It is only those creditors who can fairly allege that

they have relied, or whom the law presumes to have relied, upon the amount of capital stock of the company, who have a right to make such inquiry, or in whose favor equity will impress a trust upon the subscription to the stock, and set aside a fictitious arrangement for its payment."

In cases where parties have actual notice of the conditions existing in the corporation, it must be conceded that as to them no fraud, actual or constructive, has been committed by the shareholders and the corporation in receiving property at fictitious values in exchange for the stock of the corporation.  This was the doctrine also announced by this court in *Turner v. Bailey*, 12 Wash. 634 (42 Pac. 115).  It was further held in that case that the stockholders whose capital stock had been fully paid by transfer of certain properties, considered in good faith by all parties concerned in the promotion of the corporation as equivalent in value to the amount of its capital stock could not be rendered individually liable to creditors from the fact that by subsequent depreciation in values the property applied in payment of the capital stock became greatly impaired in value.  But one of the prominent features of that case was the fact that the claimants were present at the meeting of stockholders at the time the stock was received; that the question of the liabilities under the circumstances was discussed, and that the claimants had actual notice of the value of the stock.  The record in the case at bar shows that Holbrook, who was a disinterested witness, not having been made a party to the action, was on friendly terms with the Adamant Manufacturing Company of America, the plaintiff; that he purchased the patent right of the plaintiff; that the members of plaintiff corporation advised him to form this corpo-

ration rather than to sell the patent; that they pro-
posed that they deed the patent directly to the defendant
corporation, the right having been re-transferred by
Holbrook to the plaintiff corporation for that purpose;
that they advised him to have the controlling in-
terest; that he afterwards informed them that he was not
able to obtain the controlling interest, but informed
them what interest he did obtain; that they figured
with him about what the building and factory would
cost, and gave him their estimate of the amount neces-
sary to establish the plant, and suggested that it would
be a good plan to have about $5,000 besides for work-
ing capital.   He testified that he had made a statement
to the company of its financial condition, which state-
ment is set forth in the record showing the assets and
liabilities of the company exclusively.   This statement
was called for by the plaintiff, evidently for the pur-
pose of relying upon it in negotiating sales to the de-
fendant.   The witness testified that the members of
the plaintiff corporation frequently asked him for the
condition of the affairs and that he gave it to them;
that he gave them full facts and figures in connection
with it.   In answer to the following question by the
court, " Right in that connection, did they know this
stock was paid up in this way ? " witness said, " Oh,
yes."   " They knew of that ? "   " Oh, yes."   The tes-
timony shows that the letters which the witness Hol-
brook, while he was manager of the corporation, wrote
to the plaintiff in relation to the business standing of
the defendant corporation and in relation to the man-
ner in which it was organized, had been received by
the plaintiff corporation, or its officers, for letters
were received in reply, acknowledging their receipt.
It is impossible to set out this testimony in detail, but
we think the record fairly shows that this information

was conveyed to the plaintiff; that it was aware of the conditions and terms upon which this stock was issued. In fact there is no testimony to the contrary. And, being so aware of the terms upon which the stock was issued, the law will not impute to the defendants any fraud so far as this plaintiff is concerned. Consequently no trust will be impressed upon the subscription for its benefit.

The judgment will be affirmed.

SCOTT, C. J., and ANDERS, REAVIS and GORDON, JJ., concur.