[No. 9241. Department One. August 7, 1911.]

THOMAS E. GRADY, *Receiver of the Yakima Improvement Company, Plaintiff*, v. A. B. GRAHAM, *Defendant*.[1]

CORPORATIONS—INSOLVENCY—STOCKHOLDERS—LIABILITY ON UNPAID SUBSCRIPTIONS — RECEIVER'S SUIT — ORDER — DEFENSES — DISPUTING CLAIMS. An *ex parte* order fixing the amount necessary to pay the debts of an insolvent corporation, and directing the receiver to recover the same from stockholders on their unpaid stock subscriptions, is not binding upon stockholders as to the amount or validity of the claims of the creditors; and in the receiver's following action upon an unpaid stock subscription to recover such sum, the stockholder is entitled to dispute the claims of creditors, and reduce the amount of his liability accordingly (PARKER, J., dissenting).

CORPORATIONS—STOCKHOLDERS — LIABILITY FOR DEBTS — WAIVER— CORPORATE BONDS. Since a corporate creditor may waive his right to enforce the stockholder's liability, unpaid stock subscriptions cannot be collected to pay corporate bonds which provide that there shall be no recourse to stockholders for the payment of the bonds or any interest thereon.

Cross-appeals from a judgment of the superior court for King county, Tallman, J., entered May 4, 1910, upon the

[1]Reported in 116 Pac. 1098.

verdict of a jury rendered in favor of the plaintiff, in an action by a receiver to recover on an unpaid subscription to corporate stock. Reversed on defendant's appeal.

*Richard S. Eskridge, Frederick W. Dewart*, and *Ira Bronson*, for plaintiff, contended, among other things, that it was within the province of the court to determine the amount which will be necessary to pay the corporate debts and to direct the receiver to collect the same. *Shuey v. Adair*, 24 Wash. 378, 64 Pac. 536; *Cumberland Lumber Co. v. Clinton Hill Lumber & Mfg. Co.*, 64 N. J. Eq. 517, 54 Atl. 450. Accordingly, a binding assessment may be levied without the presence of the stockholder or service of process upon him. *Elderkin v. Peterson*, 8 Wash. 674, 36 Pac. 1089; *Glenn v. Liggett*, 135 U. S. 533; *Hawkins v. Glenn*, 131 U. S. 319; *Sanger v. Upton*, 91 U. S. 56; *Langworthy v. Garding*, 74 Minn. 325, 77 N. W. 207; *Furnald v. Glenn*, 56 Fed. 372. The order of assessment is conclusive, unless directly attacked and set aside by appropriate judicial proceedings, although made without personal notice to the stockholder. *Great Western Tel. Co. v. Purdy*, 162 U. S. 329; *Castleman v. Templeman*, 87 Md. 546, 40 Atl. 275, 67 Am. St. 363, 41 L. R. A. 367; *Collins v. Welch*, 141 Mich. 676, 105 N. W. 31.

*Lester E. Kirkpatrick* and *Peters & Powell*, for defendant, contended, *inter alia*, that the stockholder had a right to show that the action is founded upon the claims of creditors for which he is not in law liable. 10 Cyc. 734, § E; 1 Cook Stock and Stockholders and Corporation Law (3d ed.), § 209; *Bohn v. Brown*, 33 Mich. 257; *Wilson, McElroy & Co. v. Stockholders of Pittsburgh & Y. Coal Co.*, 43 Pa. St. 424; *Ward v. Joslin*, 100 Fed. 676; *Conant v. Van Schaik*, 24 Barb. 87; *Larrabee v. Baldwin*, 35 Cal. 155; *Devin v. Walsh*, 108 Iowa 428, 79 N. W. 133.

FULLERTON, J.—The Yakima Improvement Company is a corporation organized under the laws of the state of Wash-

ington, having a capital stock of $1,000,000, divided into 10,000 shares of the par value of $100 each. The corporation was formed by certain persons holding a franchise from the city of North Yakima for installing a gas lighting plant therein, and the stock of the corporation was issued to the incorporators in consideration of the transfer to the corporation of the franchise. The stock appeared on the books of the company as fully paid up. The consecutive order in which certain of the following proceedings took place is not shown very clearly in the record, but it appears that the corporation, being desirous of securing money for the installation of a gas lighting plant in the city of North Yakima, issued its coupon bonds to a considerable face value, probably some $66,000, and sought to secure the same by executing a deed of trust of its franchise and other properties to the corporation called the Trustee Company, the deed being conditioned so as to pledge the mortgaged property to the payment of any bonds that should thereafter be sold or applied to the uses of the corporation. The bonds, while negotiable in form, contained the following clause, "There shall be no recourse to the stockholders, trustees or officers of said Yakima Improvement Company for the payment of this bond or any interest thereon." There proved, however, to be no market for the bonds, and other means had to be resorted to in order to procure the necessary funds to install the lighting plant.

In the meantime, the corporation had been negotiating with the Acetylene Contracting Company of Minneapolis, Minnesota, to install an acetylene gas lighting plant, and had reached an understanding with that company by which the company agreed to install such a plant for a cash consideration of $16,000, the promissory note of the corporation for some $5,300 secured by the corporation's negotiable bonds, and negotiable bonds themselves to the face value of some $17,000. At this stage of the proceedings, A. B. Graham, the defendant in the present action, was applied to

for the necessary cash advancement. After some negotiations, the money was advanced by Graham, he taking therefor an assignment of some 4,900 shares of the stock of the corporation and its negotiable bonds of the par value of some $20,000. The lighting plant was thereupon installed for the consideration substantially as agreed upon, the work being completed in the early part of the year 1906. The plant, however, did not prove a financial success, and after being in operation for a short time, was shut.down and practically abandoned by the corporation.

In March, 1907, the Acetylene Contracting Company began an action in the superior court of Yakima county against the Yakima Improvement Company to recover upon the promissory note given it for installing the gas plant, and judgment was entered in its favor on May 29, 1907. At the time of the commencement of the action by the Acetylene Contracting Company, the Trustee Company also brought an action to foreclose the lien created by the trust deed, making parties defendant the Yakima Improvement Company, A. B. Whitson, and the county of Yakima. In its complaint it prayed for the appointment of a receiver of the property of the Yakima Improvement Company, and for an injunction against the other defendants restraining them from interfering with the property or attempting to sell the same by judicial process or otherwise. Thos. E. Grady was appointed receiver pursuant thereto. Later on the receiver reported that the ordinary assets of the corporation were insufficient to pay its debts, and that there would be a balance of liabilities over assets of approximately $25,000 after all of the property of the corporation had been converted into cash, and petitioned the court for permission to sue the stockholders of the corporation on their unpaid subscriptions to the capital stock of the corporation. No notice was given the stockholders in any manner of the pendency of the petition, but the court nevertheless, on June 29, 1907, made an order authorizing and directing the receiver "to commence

and prosecute such action in such court in such form as to him shall seem best, against such of the stockholders of the Yakima Improvement Company as to such receiver shall seem most desirable to recover therefrom on the unpaid stock liability the sum of $25,000, in order to apply the same on the outstanding liabilities of the said Yakima Improvement Company.".

Pursuant to the foregoing order, the receiver brought the present action against Graham to recover $25,000. In his complaint the receiver alleged that the defendant was the owner and holder of shares of stock in the corporation of the face value of $213,200 on which only 5 per cent had been paid, leaving a balance unpaid thereon of $202,540. The defendant answered, denying liability for any of the indebtedness of the corporation, on the ground that he was not a stockholder therein but held his stock as collateral security for advancements he had made to the corporation, and as a partial defense, denied liability on the bonded indebtedness of the corporation because of the clause of the bond exempting stockholders from liability thereon. He also set up fraud and collusion between certain of the trustees of the Yakima Improvement Company and the corporation installing the lighting plant, by which exorbitant and grossly excessive prices were paid for the lighting plant, thereby greatly increasing the apparent indebtedness of the first corporation. On the trial, which was had before the court and a jury, a verdict was returned in favor of the receiver for $10,000, and from the judgment entered thereon, both parties appeal.

The receiver contends that the court erred in refusing to enter a judgment for the full amount demanded in the complaint, notwithstanding the verdict of the jury was for the lesser sum, arguing that the defendant cannot be heard in this action to question the validity of the order made in the receivership proceedings, either as to the necessity for the order or as to the amount thereof, and since the jury found

him liable to answer, he must be held for the full amount. But as the defendant is liable as a stockholder, under normal conditions, to pay to the receiver on his unpaid stock only such an amount as will be sufficient with the other assets of the corporation to pay its valid indebtedness, and may be liable, under certain peculiar conditions, to pay only a part of such valid indebtedness, it would seem that at some time and some place he should be given an opportunity to show to the court what of the claimed indebtedness of the corporation is valid and what is not valid, and what of the valid indebtedness, if less than the whole, he is liable as a stockholder to pay. The court having in charge the receivership proceedings did not, in this instance, give the defendant this opportunity. In so far as he is concerned, the order fixing the amount to be paid in by the stockholders was *ex parte.* No notice of any hearing to determine the question was served upon him, either personally or otherwise, nor does it appear that he had actual notice of the hearing. If, therefore, notice to him was necessary in order to make the order conclusive, this order is not so.

It is argued, however, that no notice to him was necessary to make the order binding and conclusive upon him, and cases are cited which seemingly maintain this contention, some of which are from the supreme court of the United States. They proceed on the theory that the stockholders are an integral part of the corporation, and in view of the law, the stockholders are before the court in all proceedings "touching the body of the corporation." But we cannot accept this doctrine in its entirety. Doubtless the stockholders of an insolvent corporation which is in the hands of the court through its receiver are obligated and bound by all orders of the court affecting the property of such corporation of which the receiver has possession, whether or not they have received personal notice of such orders; but it is a different matter to say that the court may, on petition of the receiver in an *ex parte* order, conclusively obligate a stockholder to turn over to the

receiver property or money claimed by the receiver as property of the corporation, without giving the stockholder an opportunity to question the validity of that claim. So in this case, no doubt the court can require the receiver to apply the property in his hands to the satisfaction of such debts as shall be adjudged valid by the court on a hearing in which only the receiver and the creditor are parties, but the court cannot, on such a hearing, conclusively obligate a stockholder to create a fund for the payment of indebtedness disputed by the stockholder, or on which the stockholder denies liability. Before this can be done, the stockholder must be given an opportunity to defend against the order; he must be given his day in court. Counsel for the plaintiff say, however, that he cannot have his day in court for this purpose in this proceeding, that he must pay the money into court and contest his liability for the corporation's debts in the receivership action. But we think this not the better rule. Since he is entitled to his day in court to be heard on the validity and amount of the asserted debts of the corporation, he can make his defense in the first action to which he is a party in which it is sought to make him answer for such debts. There is no error, therefore, in the ruling complained of by the receiver.

There is nothing in the cases of *Shuey v. Adair*, 24 Wash. 378, 64 Pac. 536, or *Bennett v. Thorne*, 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113, that is contrary to the position herein taken. In each of these cases the stockholders were personally served with notice of the intended hearing brought on by the receiver to fix the amount of the unpaid indebtedness of the corporation for which the stockholders were liable, and that because of the notice in the one case, and the notice and participation in the hearing by the stockholders in the other, the orders became conclusive as to the amount of the stockholders' liability. Here, as we have said, there was no such notice.

On the appeal of the defendant, but one question is suggested. The court charged the jury to the effect that the

stockholders of the corporation were liable on their unpaid subscription to the capital stock of the corporation for the payment of the bonds issued by the corporation, notwithstanding the clause therein before quoted purporting to exempt them from such liability. This is complained of as error, and we think rightly so. The general rule on the principle of law suggested is stated in 10 Cyc. 665, in the following language:

"There is no doubt that a creditor may, by express contract with the corporation, waive his constitutional or statutory right to proceed against its shareholders in case of its failure to pay the debts; and it is equally clear that the creditor may waive this right by contract even at the time of making the contract, or subsequently, assuming in the latter case that there is a consideration accruing to the creditor for such a release of his rights."

This rule is in accord with trend of authority generally.

In 1 Cook on Stock and Stockholders and Corporation Law (3d ed.), § 216, it is said:

"A corporate creditor may, by express contract, when the debt is incurred, waive his right to collect from the stockholder debts which the corporation fails to pay. And the corporation in its contracts with third persons may, it is held in England, lawfully stipulate for the exemption of its members from the liability imposed upon them by statute in the event of the insolvency of the corporation.

"It has been held to be competent for any one dealing with the company to contract to hold the shareholders responsible to only a limited extent, to no extent at all, or to any specified extent mutually agreed upon."

2 Morawetz on Private Corporations (2d ed.), § 871, announces the rule as follows:

"However, a statutory provision declaring that the shareholders in a corporation shall be individually liable to creditors would not prevent the execution of contracts into which this liability does not enter. If a person contracting with the corporation should expressly agree to accept the obligation of the corporation without the special liability of its shareholders, he would not be able to charge the latter. Such

a provision is solely for the benefit of those dealing with the corporation, and may be waived by them."

See, also, *Brown v. Eastern Slate Co.*, 134 Mass. 590; *Robinson v. Bidwell*, 22 Cal. 379; *Callanan v. Windsor*, 78 Iowa 193, 42 N. W. 652; *Carnahan v. Campbell*, 158 Ind: 226, 63 N. E. 384; *Bush v. Robinson*, 95 Ky. 492, 26 S. W. 178.

It seems to have been the view of the trial judge that this exemption did not apply to the liability of a stockholder to answer for the debts of the corporation to the extent of his unpaid stock subscription. But if this were the rule, the exemption contained in the bonds would be meaningless. Stockholders in a corporation organized in this state, other than banking corporations, who hold stock fully paid up in money or its value in money, are not liable to the corporate creditors whether such creditors be the holders of the bonds of the corporation or its simple contract debts. There is, therefore, no other obligation to which the exemption in this instance could apply, and we think it was meant that the stockholders should not be called upon on their unpaid stock subscriptions to liquidate these bonds.

· It follows that· the judgment must be reversed and remanded for a new trial. It is so ordered.

DUNBAR, C. J;, MOUNT, and GOSE, JJ., concur.

PARKER, J. (dissenting)—I am of the opinion that the order of the superior court in the receivership cause, directing suit against the stockholders upon their unpaid stock subscriptions, was conclusive upon the stockholders as· to the total amount fixed by that·order, in so far as any defense they may make in such suits is concerned. · A stockholder paying his unpaid stock subscription under the circumstances here involved will, of course, be entitled to be heard· upon all questions touching his rights involved in the marshaling· of assets and paying of claims in the receivership, as any other stockholder may be who has an interest in a possible surplus after payment of debts. And if a stockholder is exempt from

contributing towards the payment of some particular class of debts, like one of those claimed to be here involved, he will also be entitled to be heard and resist the application of the money paid by him to such debt, but not in the suit wherein it is sought to recover from him by the receiver upon unpaid subscriptions. That is a debt he owes to the corporation, just like every other creditor owes the corporation. As to just how it shall be applied by the receiver in closing the affairs of the corporation, is a matter which it is wholly impractical to litigate in the suit against the stockholder. If every stockholder owing the corporation upon his unpaid subscription could litigate the question of the necessary amount for the receiver to collect, in a suit upon such subscription, then the question of the necessities of the receivership in that particular would be litigated just as many times as there might be number of suits against stockholders upon their unpaid subscriptions. For these reasons, I dissent from the views of the majority as to the finality of the order directing the suits against stockholders. I concur in the granting of a new trial.