[No. 11727. Department One. March 13, 1914.]

HARRY C. GORDON, *Receiver etc., Appellant*, v. CHARLES E. CUMMINGS *et al., Respondents.*[1]

APPEAL—DECISIONS APPEALABLE—AMOUNT IN CONTROVERSY—ACTIONS AT LAW OR IN EQUITY. An action by a receiver to recover from stockholders to the extent of ten per cent of the par value of their stock is equitable in its nature, and hence not within Const., art. 4, § 4, limiting the jurisdiction in appeals in civil actions at law to cases involving at least $200.

CORPORATIONS—ORGANIZATION—STOCK—SUBSCRIPTIONS — VALIDITY —OVERISSUE. A sham stock subscription by one having no financial ability to pay for the stock, with intent that he should never pay for it, and to whom no stock was ever issued, is not a compliance with the statute intended to protect creditors pending the actual issuance of the stock, and is a fraud in law upon creditors, so that subsequent stockholders cannot claim, as against creditors, that the stock thereafter issued to them was an overissue, and illegal.

SAME—LIABILITY OF STOCKHOLDERS — DEFENSES — BONUS STOCK. There is a fraud upon creditors and a violation of Const., art. 12, § 6, providing that corporations shall not issue stock except to *bona fide* subscribers therefor, and their assigns, where stock was subscribed under an agreement to take a certain number of shares of preferred stock at its par value for each of which three shares of common stock was to be given as a bonus; and holders of such stock cannot defeat an action for the balance due by claiming that they held the stock as a mere gratuity.

[1]Reported in 139 Pac. 489.

SAME—LIABILITY OF STOCKHOLDERS — DEFENSES — NONASSESSABLE STOCK. It is no defense to an action on unpaid stock, brought for the benefit of creditors, that the holders received the same as a bonus and were misled and bought their stock believing that it was nonassessable.

SAME—STOCK—CLASSIFICATION. As against creditors, under our statutes, the capital stock of a corporation cannot be classified as common and preferred, so that there could be an overissue of either class and any person could hold a share of either kind, within the limit of the authorized stock, without meeting the responsibilities and liabilities attached by law; since all but a nominal number of shares might be made unresponsive to the liability put upon the stock by law (GOSE, J., dissenting).

SAME—LIABILITY OF STOCKHOLDERS—DEFENSES—CLAIM OF CREDITORS—CONSIDERATION. In an action by a receiver for the benefit of creditors to recover on the statutory liability of stockholders, the court may not inquire into the consideration paid for the assignment of claims of creditors, in the absence of allegation and sustaining proof of fraud.

SAME—RIGHTS OF CREDITORS—NOTICE. In such a case, the subsequent knowledge of a creditor that stock had been issued as a bonus, does not deny him the right to participate in the distribution of the assets, where the liability was assumed before the issuance of the stock.

SAME—LIABILITY OF STOCKHOLDERS—DEFENSES—BONA FIDE PURCHASER—NOTICE. A holder of preferred stock, with a rider of bonus stock, purchased in the open market of a broker, cannot claim to be a *bona fide* purchaser for value, so as to escape liability on the unpaid stock, where it appears that, on the back of the stock certificate, below a blank assignment which had been filled out, there was printed a notice to the effect that the holder accepts the same upon the express condition that, in consideration of the issuance and delivery to him of........shares of the common stock as a bonus, he was not to sell or assign the same or transfer it on the books of the company for a period of two years; and that he knew of the condition, appears by the fact that he did not have the same transferred on the books.

SAME—DEFENSES—HOLDER OF STOCK—TRANSFER. The purchaser of stock cannot defend an action to recover on his liability to creditors by showing that the stock had not been transferred to him on the books of the corporation.

SAME—STOCKHOLDER'S LIABILITY—ACTIONS—PARTIES. In an action by a receiver for the benefit of creditors against stockholders to recover ten per cent of the par value of the stock under a general

order of court making a ten per cent assessment, it is no defense that all the stockholders were not joined as defendants, when it does not appear that defendants will be called upon to pay more than their just proportion of the liabilities.

COSTS—ON APPEAL—ABSTRACT. An abstract of the record does not comply with the rules of court and 3 Rem. & Bal. Code, § 1730-1 *et seq.*, and hence costs therefor will not be allowed, where the statement of facts comprised 500 pages of typewritten matter and the abstract of the testimony comprised 350 pages, and set out the statements and arguments of counsel at length and details the testimony by question and answer, instead of in narrative form.

Appeal from a judgment of the superior court for King county, Humphries, J., entered August 6, 1913, upon findings in favor of the defendants, in an action upon unpaid stock subscriptions, tried to the court. Reversed.

*Wm. Brueggerhoff, J. H. Allen, Peters & Powell, Walter S. Fulton*, and *R. L. Blewett*, for appellants.

*Hall & Cosgrove* and *Victor M. Place*, for respondents Cummings *et al.*

*Carkeek, McDonald & Kapp*, for respondent Speckert.

CHADWICK, J.—This is an action by a receiver, to recover to the extent of ten per cent of the par value of certain stock, issued by the Realty Owners Syndicate, and Fidelity Guaranty Company, an insolvent corporation. A number of the stockholders have joined as defendants, and several of them have moved to dismiss the appeal, in so far as it affects the movers, upon the ground that the amount in controversy is less than $200. The moving defendants insist that, inasmuch as the receiver has sued for only a percentage of the full amount due, admitting a liability to exist, the amount in controversy is to be determined by the prayer of the complaint, and that a dismissal must follow under repeated decisions of this court. *Northern Pac. R. Co. v. Shoemake*, 69 Wash. 140, 124 Pac. 385, and cases there cited.

It has been held in a case where a like contention was made, in an action to recover upon the superadded liability of a

stockholder, that the proceeding was equitable and that Const., art. 4, § 4, limiting the jurisdiction on appeal in civil actions at law had no application. *Bennett v. Thorne,* 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113. In a case like this, the law could not be otherwise. The real question in controversy, as will hereafter appear, is not the amount of the recovery, but whether the defendants are liable at all. The liability to meet the assessment being challenged, it would be futile to say that the receiver could not sue for a percentage of the whole amount due, but which might be less than $200, but must sue for the whole sum, whether it is needed to meet the demands of the receivership or not. Such a holding would result in one of two things that the law should avoid: first, the collection by a receiver of more than is necessary to meet his present demands and the subsequent redistribution of the amount recovered; and, second, the power of a stockholder to defeat the purpose of the statute in all cases where the percentage sued for was less than the sum of $200, or the whole amount due from a stockholder was less than $200. Either contingency would not only annul the statute, but would put an oppression upon the large stockholder that would be both unjust and inequitable. That the thing in controversy in this suit is the liability of the defendants, and not the amount demanded, may be quickly and finally disposed of by the suggestion that, if the appeal is dismissed and the judgment in favor of the moving defendants is allowed to stand, it would not operate as a bar to a subsequent action for the 90 per cent still due; and, further, a judgment in this action against the defendants would be *res adjudicata* as to the liability of the stockholders in any subsequent suit whatever the amount sought to be recovered might be. In *Ingham v. Harper & Son,* 71 Wash. 286, 128 Pac. 675, we held that the court would look to the body of the complaint and would not be controlled by the prayer when determining our jurisdiction under § 4, art. 4 of the constitution. Other cases suggesting that a suit to fix the liability of the stock-

holders of an insolvent corporation and to recover a sum sufficient to meet its debts is in the nature of an equitable proceeding, are *Lantz v. Moeller,* 76 Wash. 429, 136 Pac. 687; *Adamant Mfg. Co. v. Wallace,* 16 Wash. 614, 48 Pac. 415.

The moving defendants have made objections to the bond, and have urged that appellants have not complied with our rules requiring a certain number of briefs to be filed. We have examined the record, and find no merit in these contentions. The motion to dismiss the appeal is denied.

The Realty Owners Syndicate was organized the 28th day of February, 1908, with an authorized capital of $1,000,000, divided into 100,000 shares of $10 each. This stock was subdivided into 76,000 shares of preferred stock, and 24,000 shares of common stock. H. W. Reeves, one of the promoters of the company, subscribed for 68,000 shares of the preferred stock without condition, and 7,999 shares of the preferred stock for which three shares of the common stock were to be given for each share of the 7,999 shares of the preferred stock. One E. W. Forrester, also a promoter of the company, subscribed for one share of the preferred stock for which three shares of the common stock were to be issued. At the time Reeves subscribed for the stock, he filed agreements to release the same, copies of which follow:

"I, H. W. Reeves, do hereby subscribe and agree to pay for 68,000 shares of the preferred stock of the Realty Owners Syndicate. Signed, H. W. Reeves. Dated March 5, 1908."

"I, H. W. Reeves, do hereby subscribe and agree to pay for 7,999 shares of the preferred stock of the Realty Owners Syndicate, three shares of common stock to be given as a bonus for each share of preferred stock herein subscribed for. Signed, H. W. Reeves. Dated March 5, 1908."

"For and in consideration of certain credits to be allowed me on my obligation entered into March 5, 1908, by the subscription of 7,999 shares of the preferred stock of The Realty Owners Syndicate, I do hereby agree that, if any or all of the said stock as hereafter subscribed for by other person or persons, I will release such amount or amounts of

stock, so disposed of, provided such amounts shall be credited to my subscription account. I also release all claim to the three shares of common stock given as a bonus with each share of stock subscribed by me on such stock as shall be disposed of according to this agreement. Signed, H. W. Reeves. Dated March 5, 1908."

"For and in consideration of certain credits to be allowed me on my obligation entered into March 5, 1908, by the subscription of 68,000 shares of the preferred stock of the Realty Owners Syndicate, I do hereby agree that if any or all of the said stock is hereby subscribed for by other person or persons, I will release such amount or amounts of stock so disposed of, provided such amounts shall be credited to my subscription account. Dated March 5, 1908. Signed, H. W. Reeves."

No stock was ever issued to Reeves, neither was it intended that he should pay for it. He was financially unable to do so. In fact, the record shows that the subscription by Reeves was a mere subterfuge resorted to to meet the requirements of the law. All of the stock subsequently issued was issued upon direct subscription, or upon contract to purchase, executed by those to whom the stock was issued; the company giving, up to the limit of the 8,000 shares of preferred stock, three shares of common stock as a bonus.

This action is brought to recover a sufficient percentage of the face or par value of the common stock, to meet the present debts of the corporation and the expenses of the receivership. The demands of the receiver are resisted generally upon the ground that the stock being given as a bonus and without knowledge on the part of those receiving it of the facts attending the organization of the company, and upon the representation that the stock was fully paid and nonassessable, the defendants cannot be held liable as subscribers.

It is first contended that the subscription of Reeves and Forrester were valid subscriptions, and that the issuance of the stock now sued on was an overissue; that an overissue of stock being in fraud of those holding the certificates, no recovery can be had, under the well settled rule that the stock,

having been once issued, a subsequent subscriber acquires no title by such subscription and that corporate creditors can enforce no liability thereon. 1 Thompson, Corporations (2d ed.), § 578.

The first question, then, to determine is, whether, under the facts in this case, there was an overissue. It may be admitted that Reeves and Forrester could not escape liability as subscribers under a defense setting up that no certificates had been issued to them (1 Thompson, Corporations, 2d ed., § 774) and they might be liable to answer in equity as against subsequent stockholders; but we are dealing with the right of creditors having a primary right to depend upon a compliance with existing statutes and regulations in the formation of corporations. The statute provides that corporate stock shall be subscribed for. Its object is to protect those who deal with the corporation; to create a responsibility pending the actual issuance of the stock. If it is a waygoing concern, third parties have a right to assume that the statute has been complied with. As between stockholders, it can make but little difference whether the stock is all subscribed or not. They have their remedies and means for protection at hand. As to creditors, the law demands that there be a real subscription, made in good faith and with intent to meet the spirit as well as the letter of the law. For the legislature to pass a law requiring that there shall be a tangible responsibility behind a corporation, and the courts to hold that a sham subscription satisfies the statute, would be to nullify the work of that body. Such methods would meet the letter of the law but blast its spirit. In a case like this, an argument to sustain subscriptions made by stenographers and office boys and impecunious promoters seem sound only so long as the identity of the subscriber is concealed. A fraud upon the law is a fraud upon all men and will not bind third parties, although it may estop a sham or an accommodation subscriber upon the ground that he will not be heard to plead his own wrong.

We have gone far enough in *State ex rel. Biddle v. Superior Court*, 44 Wash. 108, 87 Pac. 40; *State ex rel. Columbia Valley R. Co. v. Superior Court*, 45 Wash. 316, 88 Pac. 332; *State ex rel. Northern Pac. R. Co. v. Superior Court*, 49 Wash. 390, 95 Pac. 490; *State ex rel. McIntosh v. Superior Court*, 56 Wash. 214, 105 Pac. 637, in holding that a trustee or agent can subscribe stock for an undisclosed principal, and that such subscription is a sufficient compliance with Rem. & Bal. Code, § 3677, to permit a corporation to institute and maintain proceedings for the condemnation of land, in the absence of evidence of a want of good faith or that such subscriptions were made by or on behalf of persons who are insolvent or under disability. Yet these cases do not deny, but rather affirm, that the real party in interest will be sought out and held to meet his liability if occasion demands it. In *Davies v. Ball, supra*, we held that persons receiving large blocks of stock in a corporation for services rendered in selling a much smaller amount of stock were put upon inquiry as to the fact that the stock was not fully paid up, and that it was incumbent upon them to show that they purchased for value and in good faith in order to avoid a liability to creditors upon unpaid stock subscriptions, and that those accepting stock without fully paying for it are liable to creditors upon an implied subscription for the stock, although no express contract was made by them. In that case, the infirmity in the corporation was in taking over property at a grossly excessive valuation. We are not now concerned with the affairs of a claimant in an eminent domain proceeding, or with the right of a debtor to urge a noncompliance with the statute as a defense to a suit maintained by a corporation, but with the liability of those holding the stock of the corporation and for which they have paid no consideration. We cannot differentiate the principle upon which the *Ball* case rests from the one which threads the affairs of the company with which we are dealing. In the one, the stockholders took under circumstances which should

have put a prudent man upon notice that he was getting something for nothing; while in this case, the subscribers had actual notice that they were getting four shares of stock for each one that they paid for.

The disposition of this court to look to the substance rather than to the form in these matters was declared in the case of *National Realty Co. v. Neilson*, 73 Wash. 89, 131 Pac. 446. There a subscription was made and the stock was charged on the books. A few days thereafter, it was surrendered to the company less a few shares retained by the organizers. There, as here, no. stock was issued under the original subscription, which was considered as not binding. It was held that a subsequent subscription or sale was not an overissue. It may be said that the *Neilson* case is to be distinguished, inasmuch as there was an actual issue and subsequent surrender of the stock. The difference is one of method and not of law. In principle, the cases are the same. The attempt here, as there, was to make no more than formal compliance with the law. Title to the stock never passed in fact, nor was it intended that it ever should pass. Our conclusion is that the Reeves subscription did not comply with the statute; that it was a fraud upon the law, and therefore not binding on creditors, and that it was never intended that it should be acted on by the organizers of the company, or was abandoned, as the reader may prefer to find the fact to be.

The incorporation of the company was irregular, and the defendants are in no better position than an ordinary stockholder would be under the same state of facts.

"It is well established that the subscribers cannot defeat such action by the defense that the corporation was not an incorporation, by reason of its not having fully complied with the terms of the statute providing for such an incorporation." Cook, Corporations (6th ed.), § 184.

"It is no defense to an action for a subscription that the subscriber at the time of subscribing was ignorant of the actual condition of the corporation." Id., § 196.

The relation of the defendants to the company was initiated by written agreements to subscribe a certain number of shares of the preferred stock and a certain number of shares of the common stock at a price equal to the par value of the preferred stock, or for a certain number of shares of the preferred stock at its par value; and following the signatures these words: "three shares of common stock with each share of preferred." The defendants who subscribed for the stock of the company should not be heard to set up, as against creditors, the subscription of Reeves or lead a court into an inquiry as to its character. That is a matter between them and the corporation. As to third parties, a court will not inquire beyond the actual relation of the stockholder to the corporation; and defendants having bought directly of the corporation, and having received from it three shares of common for each share of preferred stock, actually knowing that they were not to be paid for, cannot raise the preterlegal subscription as a shield against their personal responsibility.

Our statute makes no provision for the issuance and consequent impairment or depletion of the capital stock by awarding bonus or gift stock. The defendants were charged with a knowledge of the law, and that, as against creditors, the acceptance of the bonus stock carried an implied promise to pay for it if it became necessary to do so.

"As the company could not sell its stock at less than par, what was done amounted in law to a subscription for the stock, and nothing else. It is true the stock he took purported to be non-assessable; but that in law could only mean that no assessment would be made beyond the percentage he had specially bound himself to pay, unless the legal liabilities of the company required it." *Hawley v. Upton*, 102 U. S. 314.

"To become the owners of shares and the holders of original certificates of the first issue it was not necessary that appellants should have subscribed to any subscription agreement at all. 'It would be a mockery of justice to permit such an objection to prevail.' (*Sanger v. Upton*, 91 U. S. 56.)

'Merely accepting and holding a certificate of stock is sufficient to constitute one a shareholder.' (Cook on Stock and Stockholders, sec. 52; *Upton v. Tribilcock*, 91 U. S. 45)." *Walter v. Merced Academy Ass'n*, 126 Cal. 582, 59 Pac. 136.

Holders of unpaid stock cannot defeat an action for the balance due by claiming that they hold such stock as a mere gratuity. Thompson, Corporations (2d ed.), § 3784. Indeed, it seems to us that the framers of the constitution of this state anticipated and intended to prevent just such frauds on the law as was here attempted. "Corporations shall not issue stock, except to bona fide subscribers therefor, or their assignees." Const., art.12, § 6. If this means anything it is that one who takes the stock of a corporation is liable for its value, and that a subscription that is not made in good faith is no subscription.

One of the defenses advanced by some of the defendants is that they were misled and bought their stock believing that it was fully paid, *i. e.*, subscribed, and was nonassessable. This is not a defense. *Ogilvie v. Knox Ins. Co.*, 63 U. S. 380; *Upton v. Tribilcock*, 91 U. S. 45. There was no original subscription, and consequently no overissue of the stock. It follows that the defenses set up by the several defendants are unavailing under the authorities hereinbefore cited and the case of *Cox v. Dickie*, 48 Wash. 264, 93 Pac. 523.

It is contended on the part of some of the owners of the common stock that, although our conclusion may be accepted as the law, yet, nevertheless, the stock held by them is in excess of the 24,000 shares authorized to be issued as common stock, and is, for that reason, an overissue, and that they cannot be held to account for the value thereof. The fact is disputed, but we will accept it as true.

Appellant insists that a corporation, under the law of this state, cannot divide its stock into classes and issue it other than as the capital stock of the corporation, inasmuch as there is nothing in our statute authorizing a corporation so to do.

It is generally held that, upon the incorporation of a company, the incorporators and stockholders may, even in the absence of a statute, agree that the stock in the company shall be in part preferred stock and in part common stock, upon the theory that it amounts to no more than a contract of the stockholders among themselves as to how they shall divide the profits and in what manner they shall conduct the business of the corporation. Cook, Corporations (6th ed.), ch. XVII; 4 Thompson, Corporations (2d ed.), § 3587. It is unnecessary for us to consider this question, for we are satisfied that, whatever may be the rights of stockholders among themselves, as to creditors there can be, under our statute, but one kind of stock, that is, the capital stock of the corporation; and that, within the limit of the authorized capital stock, no person can hold a share of the stock, by whatever name it may be called, without meeting the responsibilities and the liabilities that the law attaches to such holding. To hold otherwise, would defeat the very purpose of the law, for it would then be possible, by adopting the very plan that was adopted in this case, to make all but a nominal number of the shares of the capital stock unresponsive to the liability put upon it by law.

Finally, it is contended that some of the creditors became such by assignment of claims after the corporation became insolvent, and that, in equity, they should be paid no more than was paid by them for the claims. Upon two of the claims, the liability of the company had become fixed by judgment. We know of no rule of law or equity that would warrant a court in inquiring into the consideration paid for them in the absence of an allegation and sustaining proof of fraud. 10 Cyc. 686.

The realty company, when organized, took over the business of another corporation, that of Forrester & Company. It bought its assets and assumed its liabilities. It is contended that the creditor who was a creditor of that concern cannot recover, inasmuch as he had notice that the bonus

stock was issued by the Realty Owners Syndicate. *Davies v. Ball, supra,* is relied on. That case is to be distinguished in this, that there it was held that it might be shown that a creditor dealt with a corporation with knowledge of the fact that the stock was issued for property of less value than the par value of the stock, and that, if it was so shown, he would be estopped to assert the liability of the stockholders. In this case, the credit was not so extended. It was a liability assumed before the issuance of any stock, and a subsequent knowledge on the part of the creditor would not deny him the right to participate in a distribution of the corporate assets or to enforce the shareholders' liability. To so hold, would penalize a creditor for his forbearance.

The case of defendant Wanner is slightly different from that of the other stockholders. He claims immunity as a *bona fide* purchaser in the open market of the shares owned by him. The stock, 100 shares of the preferred stock and three hundred shares of the common or bonus stock, was bought of a broker. It is not shown, nor is it contended, that there was any fraud or misrepresentation made by any one acting for the company so as to bring the case within the rule of *Johns v. Coffee,* 74 Wash. 189, 133 Pac. 4. Wanner bought the stock upon the representation of the broker, in whom he had confidence. He did not pay any attention to it further than to see that he had the right number of shares, and to "see whether they were common or preferred stock." He found that one certificate was for common and one for preferred stock. Neither certificate was represented by the company to be "fully paid and nonassessable;" hence the defendant does not bring his case within the rule of *Davies v. Ball, supra,* which he relies on. On the back of the preferred stock certificate, there is printed a blank assignment which had been filled out. Below and in corresponding type was the following:

"This certificate of stock is issued to the holder and the holder accepts same under the express agreement that in con-

sideration of the issuance and delivery to him of..........
shares of the common stock of the company as a bonus, the
holder will not within a period of two years from the date
hereof sell, assign or transfer this certificate nor the shares
represented thereby, nor any interest therein, and further
agrees that he will not endorse nor authorize anyone to en-
dorse same for him within said period, and further agrees
that this certificate shall not be transferred upon the books of
this company within said period."

The question is, was there enough to put defendant Wanner
on inquiry? After much deliberation, we have concluded
that there was. He was careful to see that he had the right
number of common shares and of preferred shares. An ex-
amination of the certificates to that extent would necessarily
show him that the preferred stock carried a three for one
issue of the common stock, and that the amount of the re-
spective issues corresponded with the proportions used in
the agreement made by the holder that, in consideration of
the issuance of the bonus stock, he would not transfer it on
the books of the company within two years from the date of
issuance. The fact that he did not have the stock transferred
on the books of the company is evidence that he knew of the
conditions attached to the issuance of the common stock and
acted upon it. If this action had been brought against the
assignor as holder, there could be no question as to his lia-
bility. The present holder stands in the same relation to the
receiver. *Upton v. Tribilcock, supra.*

Nor are we impressed with the proffered defense that
Wanner never became a stockholder, and that, after finding
that the company was in bad shape, he did not participate
further in its deliberations. This defense is bottomed on
the contention that the stock was not transferred on the
books of the company. Admitting this premise to be the
law, although it has been held otherwise, defendant is in
no position to raise it. This defense would be available if
the suit were brought by the company but cannot be urged

in a suit brought on behalf of creditors. Wanner bought the preferred stock and its rider of common stock with notice that the holder had agreed, in consideration of the issue of the common stock, that he would not offer it for transfer on the books of the company. He has voluntarily assumed the place of the original holder, and whatever the rights of the company may be against that holder, or whatever remedies he may have against his assignor, as to creditors he is a holder of unpaid stock, and must meet his legal liability.

This defendant also complains that, inasmuch as some stockholders have not been joined in the suit, and service has not been made on others, the action cannot be maintained, under the authority of *Beddow v. Huston,* 65· Wash. 585, 118 Pac. 752. There, one subscriber was sued singly for the sum of $240,000 to meet debts aggregating $4,000. The case turned, in so far as this case is concerned, on the order of the court. The complaint was otherwise palpably insufficient. We held that the court could not single out one stockholder and direct a suit against him for the whole amount of the corporate debts. Here a general order was entered, and it does not appear that defendant will be called upon to pay more than his just proportion of the liabilities of the corporation.

The statement of facts in this case comprises 500 pages of typewritten matter. The abstract of the testimony comprises 350 pages. The statements of counsel, their arguments, and the rulings of the court are set out at length. The testimony is detailed by questions and answers, and is not in narrative form, as our rule requires. We are constrained to hold that the abstract does not comply with the statute, Laws of 1913, ch. 116, p. 349 (3 Rem. & Bal. Code, § 1730-1 *et seq.*), and the rule of this court; and no costs will be allowed therefor.

The decree of the lower court is reversed, and the case

will be remanded with instructions to enter a decree in favor of the appellant.

CROW, C. J., ELLIS, and MAIN, JJ., concur.

GOSE, J. (dissenting)—I do not think that the classification of the capital stock of a corporation into preferred and common stock violates either the letter or the spirit of the statute. It is true that all such stock is capital stock, but it is capital stock of different classes. It follows of necessity that there can be no overissue of either class. It being conceded that the common stock held by the respondents is an overissue, they never became stockholders or subscribers, and hence incurred no liability. It is said in the majority opinion that this view "would defeat the very purpose of the law, for it would then be possible, by adopting the very plan that was adopted in this case, to make all but the nominal number of the shares of the capital stock unresponsive to the liability put upon it by law." It seems to me no such result would follow. In the instant case, the par value of the stock of both classes was fixed at $10 per share. Each class of stock would, therefore, be required to meet its own obligation. Moreover, the statute, Rem. & Bal. Code, § 3679 (P. C. 405 § 3), requires that the articles of every corporation shall state the amount of the capital stock of the corporation; that they be executed in triplicate; that one of such articles shall be filed in the office of the secretary of state, and another in the office of the county auditor of the county in which the principal place of business of the company is intended to be located, and the third shall be retained in the possession of the corporation. If the statute is complied with, the public record will disclose to all persons dealing with the corporation the amount of its capital stock; and, if the capital is divided into classes, the articles should show the several classes and the amount of capital assigned each class. If the record speaks the truth, no one would be mis-

led. If the articles do not speak the truth, other principles of law would apply.

I therefore dissent.