[No. 11723. Department One. November 7, 1914.]

## C. J. CHAMBERLAIN, *Trustee etc., Respondent*, v. H. O. PIERCY *et al., Appellants*.[1]

CORPORATIONS — INSOLVENCY — STOCK SUBSCRIPTIONS — ACTIONS BY TRUSTEE—CONDITIONS PRECEDENT—NOTICE TO STOCKHOLDERS. A trustee in bankruptcy appointed for an insolvent corporation, represents the creditors, and before he can maintain an action against a stockholder on unpaid stock subscriptions, the stockholder must have notice and an opportunity to be heard upon the validity of the debts and the *pro rata* amount that it will be necessary to collect from each stockholder to meet the liabilities; and a complaint failing to state such facts as condition precedent to action does not state a cause of action.

SAME—INSOLVENCY—STOCK SUBSCRIPTIONS—TRUST FUND. The unpaid subscriptions to the capital stock of an insolvent corporation are a trust fund for the benefit of creditors.

CORPORATIONS—STOCK SUBSCRIPTIONS—ACTIONS — SUBSTITUTION OF TRUSTEE AS PLAINTIFF—EFFECT. Where an action at law had been commenced by a corporation against stockholders to recover their unpaid stock subscriptions and thereafter a trustee in bankruptcy had been appointed and was substituted as plaintiff, the nature of the action is changed to an equitable proceeding to recover sufficient of the subscriptions, as a trust fund to pay creditors, and before the action could proceed, a stockholder must be given an opportunity to be heard on the validity of the claims and the amount necessary to meet his *pro rata* share of the debts, as though the action had been commenced by the trustee.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered June 20, 1913, upon findings in favor of the plaintiff, in an action to recover unpaid stock subscriptions. Reversed.

*Ballinger, Battle, Hulbert & Shorts*, for appellants.

*Boyle, Brockway & Boyle*, for respondent.

MAIN, J.—This action is prosecuted by the trustee in bankruptcy for the purpose of recovering unpaid subscriptions to the capital stock of a corporation. The cause was

[1] Reported in 143 Pac. 977.

tried to the court sitting without a jury, and resulted in a judgment for the plaintiff in the sum of $5,900, and interest. From this judgment, the defendants prosecute the appeal.

The cause was originally instituted on May 17, 1910, by the Redondo Clay Company, a corporation. On November 29, 1910, upon the petition of one M. A. Dillon, trustee, and two other creditors the corporation was adjudged a bankrupt. Thereafter one Clyde Chamberlain was appointed trustee in bankruptcy. After Chamberlain had been appointed trustee, he petitioned the superior court to be substituted as a party plaintiff in this action, which had previously been instituted by the corporation. An order was entered making the substitution. Thereupon an amended and supplemental complaint was filed. The amended and supplemental complaint, aside from the formal parts, alleged in substance as follows:

That the Redondo Clay Company was a corporation organized and existing under the laws of the state of Washington; that the corporation was organized for mercantile, manufacturing and commercial business, with a capital stock of $100,000, divided into one thousand shares of the par value of $100 per share, all of which stock had been subscribed for; that on December 31, 1908, the defendant H. O. Piercy duly subscribed in writing for 120 shares of the capital stock of the company (setting out the contract, which shows that all of the stock had been subscribed for); that after the stock had all been subscribed for, as shown by the original subscription contract, additional subscriptions were accepted by officers of the company to the total number of 305 shares; that, on December 25, 1909, at a meeting of the board of trustees, it was determined by unanimous vote that the number of shares held by the original subscribers should be proportionately reduced and the stock issued to the persons subscribing for the 305 additional shares. By this arrangement the original subscription of Piercy was reduced to 59 shares. On January 25, 1910, at a meeting of the board

of trustees, a resolution was passed making a call for the un-
paid stock subscriptions, and providing that all subscribers
not paying on or before the 25th day of February, 1910,
should, from and after that date, be considered delinquent.
Notice of this call was duly given to the stockholders, includ-
ing Piercy.

It was further alleged, in substance, that, subsequent to
the commencement of this action, and subsequent to the over-
ruling of the demurrer to the original complaint, the Redondo
Clay Company, a corporation, was duly and regularly
adjudged a bankrupt in the district court of the United
States for the Western district of Washington; that C. J.
Chamberlain was duly and regularly appointed as trustee in
bankruptcy; that, after the adjudication of bankruptcy, by
an order of the Federal court, the trustee was authorized to
intervene in this action and be substituted as a party plain-
tiff; that the claim of the Redondo Clay Company against the
defendants, forming the basis of this action, was listed as one
of the assets of the bankrupt corporation in the bankruptcy
proceeding; that, pursuant to the order of the district court,
the trustee intervened in this action, and was substituted as
a party plaintiff herein; and that there is due and owing from
the defendants upon the stock subscription the sum of $6,900,
with interest thereon from February 25, 1910.

To this amended and supplemental complaint, a demurrer
was interposed, and by the court overruled. Thereupon an
answer was filed. This answer admitted certain allegations
of the amended and supplemental complaint and denied others,
and contained three separate affirmative defenses.

In the first affirmative defense, it was alleged that the de-
fendants were largely interested in a corporation which owned
large tracts of land at Redondo beach, in Pierce county, and
assisted in the organization of the Redondo Clay Company
in order to secure a manufacturing institution to be located
at that point which would assist in building up the locality
and thereby increase the value of the property of the com-

pany in which the defendants were interested; that, when the stock subscription was made, it was agreed between the promoters of the company and Piercy that the latter should subscribe for 120 shares of the capital stock in order that the stock might all be subscribed for, and that no stock should be issued to him, but that he should secure subscriptions from his friends for this stock, which he thereafter did. That the stock originally subscribed for by Piercy was issued to these other persons, who became purchasers.

In the second affirmative defense, it is alleged that, on March 1, 1910, the trustees closed down the brick plant; that at that time there was due the company from A. L. Fisher, the president of the company, and other persons, more than $30,000 upon their respective stock subscriptions; that, in addition thereto, the corporation was the owner of about $67,-000 worth of property; that, when the plant was closed down on the 1st of March, 1910, it was directed that no salaries should be paid to the officers and employees after that time; that thereafter Fisher, and the other officers and directors of the corporation, conspired together to wreck the company by throwing it into bankruptcy, and in furtherance of this conspiracy, while they had the bankruptcy proceedings under contemplation, they met as directors of the corporation and voted themselves large back salaries.

In the third affirmative defense it is alleged that about twenty persons are indebted to the corporation upon their stock subscriptions, amounting to approximately $30,000, and that each and all of these subscribers are solvent and financially responsible; that no action has been commenced or is pending by the corporation or the trustee in bankruptcy against any of these stock subscribers. It is further alleged that the bankruptcy proceedings were controlled and dominated by A. L. Fisher and his associates, and that this action was originally instituted and is now prosecuted through the collusion of the trustees of the company, and is an attempt

to compel the defendants to pay the fraudulent claims of the officers of the company.

.To these affirmative defenses, a motion to strike was directed. The court declined to strike from the affirmative defenses the allegations which described the circumstances under which Piercy subscribed for the stock and that the stock subscribed for by him had subsequently been sold to other parties. Generally speaking, the other allegations in the affirmative defenses were stricken. The answer was recast to conform to the ruling of the court. A reply was filed to the affirmative matter in the answer as amended. Upon the issues thus framed, the cause went to trial and resulted in a judgment as above indicated.

The first question is whether the amended and supplemental complaint stated a cause of action. It should be noted that this amended and supplemental complaint makes no allegation (a) as to the value of the assets of the company, (b) that the defendants had notice or an opportunity to be heard at any time or place upon the validity of the claims against the insolvent company, and (c) that the court, at any time after notice to the stockholders had determined what proportion of each stockholder's subscription remaining unpaid was necessary to meet the valid obligations of the company, after the assets had been exhausted and after this finding had directed that proceedings be instituted against all such stockholders.

The rule in this state, as evidenced by the decisions of this court, is that, where a receiver is appointed for an insolvent corporation, before he can maintain an action against a stockholder, it is necessary that such stockholder have notice and an opportunity to be heard upon the validity of the claims or alleged debts of the insolvent company, and that an order be entered directing proceedings against the stockholders whose subscriptions are unpaid for such amount as, together with the assets, will be sufficient to meet the liabilities and the costs of the receivership. *Grady v. Graham*, 64 Wash. 436,

116 Pac. 1098, 36 L. R. A. (N. S.) 177; *Beddow v. Huston,*
65 Wash. 585, 118 Pac. 752.

In the *Grady* case, upon petition to the superior court by
the receiver, an order was entered without notice directing
that the receiver prosecute an action against the stockholders
whose subscriptions to the insolvent company had not been
paid for such unpaid stock liability. It was there said:

"It is argued, however, that no notice to him was necessary
to make the order binding and conclusive upon him, and cases
are cited which seemingly maintain this contention, some of
which are from the supreme court of the United States. They
proceed on the theory that the stockholders are an integral
part of the corporation, and, in view of the law, the stock-
holders are before the court in all proceedings 'touching the
body of the corporation.' But we cannot accept this doctrine
in its entirety. Doubtless the stockholders of an insolvent
corporation which is in the hands of the court through its
receiver are obligated and bound by all orders of the court
affecting the property of such corporation of which the re-
ceiver has possession, whether or not they have received per-
sonal notice of such orders; but it is a different matter to
say that the court may, on petition of the receiver in an *ex
parte* order, conclusively obligate a stockholder to turn over
to the receiver property or money claimed by the receiver as
property of the corporation, without giving the stockholder
an opportunity to question the validity of that claim. So in
this case, no doubt the court can require the receiver to apply
the property in his hands to the satisfaction of such debts as
shall be adjudged valid by the court on a hearing in which
only the receiver and the creditors are parties, but the court
cannot, on such a hearing, conclusively obligate a stockholder
to create a fund for the payment of indebtedness disputed
by the stockholder, or on which the stockholder denies lia-
bility. Before this can be done, the stockholder must be
given an opportunity to defend against the order; he must
be given his day in court. Counsel for the plaintiff say,
however, that he cannot have his day in court for this pur-
pose in this proceeding, that he must pay the money into
court and contest his liability for the corporation's debts in
the receivership action. But we think this not the better
rule. Since he is entitled to his day in court to be heard on

the validity and amount of the asserted debts of the corporation, he can make his defense in the first action to which he is a party in which it is sought to make him answer for such debts."

In the *Beddow* case, the complaint alleged the amount of assets and the amount of the liabilities, and that an order had been entered by the superior court directing that an action be brought against the defendant on a subscription to the capital stock of the corporation. After this order had been entered, the defendant was given notice thereof and a demand was made upon him for the payment of his subscription. It was there held that the complaint did not state a cause of action, because it did not show that the proceedings were directed against all stockholders, and did not show that the defendant had had notice and an opportunity to be heard upon the validity of the claims against the corporation before the order was entered directing that suit be instituted against him. It was there said:

"Any order the court might make should direct proceedings against all stockholders whose stock subscriptions were unpaid, for such an amount as, together with the admitted assets, would be sufficient to meet the liabilities and the cost of the receivership. The stockholders were entitled to notice of such a proceeding, in order that they might contest the liabilities of the corporation and their liability upon their unpaid stock. The court could then determine the liabilities, and the proper amount to be assessed against or paid by each stockholder, and could then direct the bringing of suits to recover the amounts determined, if not voluntarily paid. Such a liability, however, could only be determined upon notice to the stockholder and giving him his day in court. It could not be determined, as it was here, in an *ex parte* proceeding."

There is no claim in the present case but that the rule applicable to a receiver appointed by the state court would be equally applicable to a trustee in bankruptcy acting by authority of the Federal court. But it is contended that the rule supported by the *Beddow* and *Grady* cases is not ap-

plicable to the facts in this case, because here the call was made and the suit instituted prior to the time when the trustee in bankruptcy was appointed. If this distinction is sound, the complaint states a cause of action; otherwise it does not. Unpaid subscriptions to the capital stock of an insolvent corporation are a trust fund for the benefit of creditors. *Burch v. Taylor*, 1 Wash. 245, 24 Pac. 438; *Thompson v. Huron Lumber Co.*, 4 Wash. 600, 30 Pac. 741, 31 Pac. 25; *Conover v. Hull*, 10 Wash. 673, 39 Pac. 166, 45 Am. St. 810; *Adamant Mfg. Co. v. Wallace*, 16 Wash. 614, 48 Pac. 415; *Lantz v. Moeller*, 76 Wash. 429, 136 Pac. 687.

A suit instituted by a receiver of an insolvent corporation for the purpose of recovering unpaid subscriptions to the capital stock is an equitable proceeding. *Gordon v. Cummings*, 78 Wash. 515, 139 Pac. 489. There is a marked distinction between the purpose of an action instituted by a corporation while it is a going concern for the purpose of recovering unpaid subscriptions, and an action instituted by a receiver after insolvency for the purpose of recovering for unpaid stock. In the former, the primary object is to collect money to further the business and purposes of the corporation and continue it as a going concern. In the latter, the primary object is to collect only that amount of money from the stockholders which, together with the other assets, will be sufficient to meet the valid claims and pay costs incident to the administration of the affairs of the insolvent company. The receiver is the representative of the creditors.

If an action instituted by a receiver against a stockholder is an equitable action, as held in the *Gordon* case, by force of the same reasoning, an action which had previously been begun by the corporation as a law action would become an equitable action when a receiver or a trustee in bankruptcy is substituted as a party plaintiff. From that time forward, the whole purpose of the action changes. The receiver or trustee is seeking to collect sufficient money from the trust fund which, together with the other assets, will meet the valid

claims against the corporation. If the assets are not sufficient, he must reach into the trust fund and take therefrom an amount sufficient to pay the balance. The same reasons which impelled the holding in the *Beddow* and *Grady* cases that, before an action could be prosecuted against a stockholder, he must have had notice and an opportunity to be heard on the claims and upon what proportion of his unpaid stock would be necessary in connection with the other solvent stockholders to meet the claims, would require a holding that, even though the suit had been instituted before, when the trustee in bankruptcy is substituted as a party plaintiff, he must proceed as though the action had been instituted by him at that time. Otherwise, one stockholder might be compelled to respond for the full amount of his subscription and thereafter contest the validity of the claims in the bankruptcy court and bring an action against the other stockholders to enforce contributions. This would lead to a multiplicity of suits and legal contests. The action being an equitable one, the stockholder should have the right to have determined the validity of the claims and the proportionate amount of his unpaid subscription which is necessary to meet the same, together with the other assets of the company, before the action proceeds against him for the full amount of his subscription.

The respondent cites some cases as sustaining the view that, when the action is instituted by the corporation before the appointment of a receiver or a trustee in bankruptcy, it will proceed thereafter as a law action to the same extent as though it were a suit upon a promissory note. One of the cases cited is *Elderkin v. Peterson*, 8 Wash. 674, 36 Pac. 1089. There the action was not based upon an assessment made by the trustees, but upon that made by the court. The question was not the same as here presented.

The other cases cited are from the courts of other jurisdictions. These appear to support the respondent's contention. It does not appear, however, whether the courts rendering those decisions recognized the trust fund doctrine

as applied to unpaid stock subscriptions, or that a suit prosecuted by a receiver or trustee in bankruptcy is an equitable action. If the cases are not distinguishable, we think the rule announced by them should not be followed, as it is unnecessarily harsh. The rule which we have adopted appears not only to be supported by better reason, but in its practical operation would be more just and equitable.

The amended and supplemental complaint having failed to allege that the defendants had notice and an opportunity to be heard at some time or in some place upon the validity of the claims, and having failed to allege that an accounting had been held by the court and the proportionate amount which each solvent stockholder should pay in order to meet the claims determined, does not state a cause of action.

The judgment will be reversed, and the cause remanded with directions to the superior court to cause the issues to be reframed; or, if the respondent so elects, that the action be dismissed without prejudice.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.